1834.

Gates
v.
Green.

---

### Gates & Colvin vs. Green.

A lessee of buildings which are consumed by fire, has no relief, either at law or in equity, against an express covenant to pay rent, unless he has protected himself by a stipulation in the lease, or the landlord has covenanted to rebuild.

Where there was an express agreement, between the lessee and the agent of the lessor, that the rent should cease if the building leased should be casually destroyed, and that a stipulation to that effect should be inserted in the lease, but which stipulation was inadvertently omitted, and the premises were afterwards accidentally burned, the lessor was perpetually enjoined from prosecuting any suit, or proceeding, for the recovery of rent which accrued subsequent to the destruction of the premises; and the lease was decreed to be given up and cancelled.

This was an appeal from a decree of the late vice chancellor of the fifth circuit, dismissing the complainants' bill. The defendant, J. A. Green, was the owner of two lots in the village of Syracuse, on which there was a tavern house and out buildings. These premises were leased by the defendant to S. Cosset, and to another person who was his surety in the lease, for the term of three years from the 1st of January, 1826, at the rent of $250 per annum, payable quarterly. The lessees covenanted to keep the premises in repair during

January 28.

the term, and to leave the same in good repair at the expira-tion of the lease, ordinary wear excepted. On the 12th of March, 1827, Green, who was then at Utica, wrote to S. Strong, his agent at Syracuse, stating that he had been in-formed, by a letter from Cossit, that he wished to surrender up the lease of the premises on the first of April. He there-fore authorized Strong to release him, provided he procured a good tenant for the remainder of the term, with satisfactory security. The complainant Gates applied to Strong, a few days thereafter, and agreed to rent the premises for two years if certain repairs were made. Gates afterwards called on the defendant personally, and he consented to make the repairs, provided an increased rent was given, equal to the interest on the cost thereof. He accordingly wrote his agent to that effect. And he again authorized his agent to release Cossit, upon his paying up the rent to the first of April, and procuring a good tenant for the remaining two years, with security for the payment of the rent, and subject to the conditions of Cossit's lease. The agent thereupon agreed to lease the premises to Gates, for two years from the first of April, 1827. He also agreed to insert a special provision in the lease, that the rent should cease, if the house should be burned down, by casualty, during the term. And D. S. Colvin, one of the com-plainants, agreed to join in the lease, as surety for the pay-ment of the rent, upon those terms. The agent, who was an attorney, agreed to prepare the lease in conformity with the agreement. He prepared it accordingly ; but, through inad-vertence, neglected to insert therein the special covenant that the rent should cease if the house should be casually destroy-ed by fire. The lease was executed without being read by the complainants ; the agent being about to leave his office at the time they called to execute the same. And the mis-take was not discovered, by either party, until after the house was casually burned, in December, 1827. After the house was burned, Gates offered to pay the defendant the rent, up to January, 1828, and to surrender the lease. The defendant, however, refused to accept the surrender, and subsequently brought a suit at law, for the recovery of the rent for the whole term.

*G. C. Bronson,* for the complainants.

*J. A. Spencer,* for the defendant.

THE CHANCELLOR. It appears to be a principle of natural law, that a tenant who rents a house or other tenement for a short period, and with a view to no other benefit except that which may be derived from its actual use, should not be compelled to pay rent any longer than the tenement is capable of being used. By the law of Scotland, upon the hire of property, a loss or injury to such property, which is not caused by the fault or negligence of the hirer, falls on the owner. And the lessee is entitled to an abatement of the rent, proportioned to any partial destruction of the subject. (1 *Bell's Com.* 452.) The Napoleon code also declares, that if the thing hired is destroyed by fortuitous events, during the continuance of the lease, the contract of hiring is rescinded; but if it be only destroyed in part, the lessee may, according to circumstances, demand either a diminution of the price or the rescinding of the lease itself. (*Code Nap. Art.* 1722.) And the same provision, substantially, is found in the civil code of Louisianna. (*Art.* 2667.) The learned commentator on the law of nature and of nations, also considers this a plain principle of natural law. And he refers to a law of Sesostris, an Egyptian king, that if the violence of the river should wash away a part of the land, the tenant should be proportionably abated in his rent. (*Puff. Book* 5, *ch.* 6, § 2.) The same principle has also found its way as far north as Newfoundland; where, by the custom of that country, the tenant of a building may surrender his lease and be excused from the further payment of rent, in case of a casual destruction of the building by fire. (*See Broom* v. *Preston, Sel. Ca. S. C. Newf.* 491.) And Rutherford, in his lectures on natural law, makes a very sensible distinction between a casualty which destroys the value of the use of the property, which loss naturally falls on the lessee, and one which destroys the property itself, of which the lessee has hired the use. In which latter case he holds that the lessee is excused from the payment of further rent. (*Ruth. Inst.* 127.) The cases of *Harrison* v. *North,* (1 *Ch. Cas.* 83,)

1834.

Gates
v.
Green.

*Brown* v. *Quilter,* (*Ambler,* 619,) *Campden* v. *Morton,* before Lord Northington, (*Serg. Hill's M. S.*) and *Steel* v. *Wright,* before Lord Apsley, in 1773, (1 *Term Rep.* 708, *note,*) also show that some of the English chancellors struggled hard to introduce this principle of natural law into the administration of justice, in their courts. A contrary principle,. however, finally prevailed in the equity courts of England, as well as in the courts of law. And it must now be considered as settled, both in England and in this state, that a lessee of premises which are burned, has no relief against an express covenant to pay the rent, either at law or in equity; unless he has protected himself by a stipulation in the lease, or the landlord has covenanted to rebuild. (3 *Kent's Com.* 466.) Although the law is thus settled, I have, however, thought proper to refer to the opinions of these distinguished judges and civilians, and to the laws of other countries, for the purpose of showing that the defendant in this case has no natural equity, to entitle him to rent for these premises, after the destruction of the buildings which constituted their only value to the lessees. And if the lessees did not in fact make an agreement to pay the rent, in the event which has occurred, that they are entitled to relief.

It is established, beyond all question, that there was an express agreement, between the lessee and the agent of Green, that the rent should cease if the building should be casually destroyed by fire; and that a covenant or stipulation to that effect should be inserted in the lease. The answer of the defendant, setting up a specific agreement as having been entered into between himself and Gates at the time he called upon him as to the repairs, is not responsive to the bill; and is not supported by the proofs in the cause. Indeed, it is hardly consistent with the defendant's own letters, to suppose any valid or binding agreement was made, or was intended to be made by either party at that time. It was at most a mere proposition for an agreement, which was *in fieri* until the final consummation thereof with the defendant's agent, when he undertook to prepare the lease. Until that time, Colvin was certainly not a party to any agreement. He cannot, therefore, be bound by any other agreement than that which

he supposed was contained in the written lease when he executed the same. He certainly was not aware of any want of authority in the agent to make such a lease ; and he was expressly informed that the lease contained a stipulation which would exempt him from liability for the rent, in the event which has happened. If the agent exceeded his powers, and made an agreement which he was not authorized to make, the principal must either repudiate the lease altogether, or he must consider himself bound by the stipulations, in the favor of the other party, which should have been contained therein. The lessor cannot be permitted to affirm so much of the agreement as was for his own benefit, and to disaffirm so much as provided for the protection of the rights of the other parties. It is hardly probable that Gates would have entered into such a covenant as was contained in the lease to Cossit ; which would not only have rendered him and his surety liable for the rent in case of the loss of the building by fire, but would also in that case have compelled them to rebuild the house at their own expense. For the exception which is contained in the covenant to repair in this lease, is not found in the lease to Cossit. And it is evident, from the testimony, that Colvin would not, knowingly, have entered into an agreement which would have rendered him liable to that extent.

The vice chancellor was wrong in supposing these complainants were bound in equity to perform an agreement which they never made, or intended to make, because Strong had exceeded his authority in accepting a surrender of the former lease to Cossit. If that act was unauthorized, the defendant must seek his remedy, if he has any, against Cossit and his surety, under the covenants in the original lease, or against the agent who has received a surrender of that lease improperly. But if he elects to ratify the act of his agent as to this lease, he must ratify it fully ; and must make the written agreement what it was supposed to be by the complainants, and his agent, when they executed the same.

The decree of the vice chancellor must be reversed ; and the lease must be delivered up and cancelled. Green must be perpetually enjoined from prosecuting any suit or proceedings for the collection of the rents which have accrued subse-

quent to the burning of the house. And as he has been carrying on an unjust and inequitable controversy with these complainants, after he had full knowledge of their equitable rights, and after they had offered him more than he had any just right to claim, he must pay to the complainants their costs in this suit.