## WOOD *vs.* HUBBELL and others.

Where a demised building is destroyed by fire, between the execution of the lease and the commencement of the term, and before the lessee has taken possession of the premises, he is not liable to pay rent.

Until the term commences and possession is given of the demised premises, a lease is an executory contract on the part of the lessor, for a breach of which he may be prosecuted, in the same manner as upon any other executory contract. And it is the same on the part of the lessee. *Per* JOHNSON, P. J.

Previous to the commencement of the term, the rights of the parties to a lease rest in mere contract. *Per* JOHNSON, P. J.

The surrender of the possession, by the lessor, to the lessee, is a condition precedent to the right of the former to demand, or the obligation of the latter to pay, rent.

And the rule is the same whether the lessor *refuses* or is *unable*, to give possession.

IN EQUITY. This was an appeal from a decision of the late vice chancellor of the 8th circuit. The complainant, on the 8th of November, 1843, took a lease from the defendants of a tavern stand in the city of Rochester, known as the mansion house, for the term of eight years from April, 1844, at an annual rent of $1000, payable quarterly. The building was destroyed by fire in February, before the term commenced. The bill alleged that before the lease was made and signed, it was

agreed between the complainant and the defendants, that it should contain a clause that in case the premises should be destroyed by fire during the term, the lease and all covenants for the payment of further rent should terminate, That in drawing the lease the clause was omitted, by oversight and mistake, and the lease was executed by the parties without noticing the omission, The defendants rebuilt the house in July, 1844, and the complainant never went into or took possession. After the destruction of the building the complainant called upon the defendants to cancel the lease, but they refused to do so; and after the expiration of the first quarter brought their action for the recovery of the quarter's rent. The bill was filed to have the lease reformed, by the insertion of the clause in regard to the destruction of the building by fire, and then delivered up to be cancelled, and to restrain the suit at law. The cause was heard on pleadings and proofs before Vice Chancellor Whittlesey, who made a decree dismissing the bill; and the complainant appealed from the decree.

*H. Humphrey*, for the appellant.

*L. Farrar*, for the respondents.

*By the Court*, JOHNSON, P. J. The lease, as drawn up and executed by the parties, must be presumed to contain the true agreement between them. And the presumption is very strong, and exceedingly difficult to be overcome, where, as in this instance, the instrument is drawn up in the presence of the parties and deliberately read over in their hearing, and afterwards subscribed by them without objection. It is obvious, however, that a mistake might be made under such circumstances, and some very material provision which the parties had agreed upon and intended to have inserted in the writing be left out through mistake and oversight, so that notwithstanding all their care and deliberation, the instrument as executed would not stand as a true and faithful witness of the entire agreement. In such a case it would be the unquestionable right and duty

of a court of equity to reform the instrument so as to make it conformable to the precise intent of the parties.. (*Story's Eq.* §§.152, 155, 156.)    And relief will be afforded by enforcing the real agreement, or ordering the imperfect one to be surrendered to be cancelled, according to the justice and equity of the case as established by the admissions or proofs of the parties. (*Gates* v. *Greene,* 4 *Paige,* 355.   .*Keisselbrack* v. *Livingston,* 4 *John. Ch.* 144.   *Gillespie* v. *Moore,* 2 *Id.* 585.   *Story's Eq.* § 161.)    But to warrant this interference, the proof of the mistake or unintentional omission must be so clear as to leave no reasonable doubt whatever of the fact.   If the evidence be loose, equivocal, or contradictory, courts of equity should never interfere, but should leave the contract to stand, and allow it to be enforced as it was executed between the parties.   (*Story's Eq.* § 157, *and cases last above cited.*)

In this case the evidence is not of that clear, unequivocal and satisfactory character that would warrant us in ordering this provision to be inserted, or the lease to be surrendered to be cancelled on the ground of mistake.   The most that can possibly be said from the evidence in the case is, that although it is probable there was such an understanding, it is still quite doubtful whether it was definitely agreed upon ; and whether the mistake was not after all as to the rule of law in regard to the rights of the parties under such a lease as this, in case of the destruction of the building by fire.

We must not allow the strong natural and moral equity which we cannot fail to see existing against the defendants' claim for rent, under the circumstances of this case, to divert our attention from those general and salutary rules which courts have from time to time established as the law of equity. The evidence as to the agreement that the lease should cease to be obligatory in case of the destruction of the building by fire, and the oversight or mistake in failing to insert it in the lease, is not so clear and certain as to place the matter beyond reasonable doubt ; and relief on this ground must be denied.

But admitting there was no mistake, and that the lease contains the true agreement between the parties, is not the com-

plainant entitled to have it surrendered to be cancelled, *quia timet?* It is true he seeks by his bill to have the lease reformed, and then cancelled. But if such a case is made by the bill and answer that we can see clearly that the lease should be cancelled, without reformation and without reference to any mistake in regard to its terms, I do not see why the relief should be withheld. It is not inconsistent with that prayed for, but is the main thing which the complainant seeks to accomplish by his proceeding; and I think it should be regarded as sufficient if the facts established entitle the party to the particular relief sought, although his reasons for demanding it may be insufficient. It is enough that good and sufficient reasons are fairly deducible from the case presented. This is a distinct and very ancient head of equity jurisdiction, and proceeds upon the general notion that wherever a party holds a paper purporting on its face to be a claim against another, which ought not in law or equity to be enforced, equity will order it to be surrendered or cancelled, to relieve the other party from the apprehension of its being used against him improperly at some future day. It is said, " if an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for some sinister purpose." (*Story's Eq.* § 700.) And this rule prevails not only in regard to instruments fraudulent in their inception and therefore void, but as well in respect to those originally valid, but which, by the happening of some subsequent event, have become *functus officio.* (*Story's Eq.* § 705.) And it seems not at all material whether a suit is actually commenced or the party has a perfect defence at law, as the specific relief is such as courts of law cannot give. (*Story's Eq.* §§ 699, 700, 701. *Hamilton* v. *Cummins,* 1 *John. Ch.* 517. *Gates* v. *Green,* 4 *Paige,* 355.)

The bill in this case alleges, and the answer fully admits, the making of the lease in November, 1843, to commence on the 1st of April, 1844; the destruction of the demised building by fire in February, before the term commenced; the request of the complainant in March, after such destruction, to the defendants to cancel the lease, and their refusal; and the subsequent

Wood v. Hubbell.

erection of a new building upon the same site by the defendants, and its occupancy by them. There is no pretence that the complainant ever took or had possession of the building, or any portion of the premises, for an hour. The building destroyed was the thing leased, as is apparent from the terms of the lease; and when the term was to commence it had no existence, and no possession or enjoyment could possibly be had by the complainant. When the new building was erected the defendants took possession of it and rented it to another without any regard to the complainant's lease. Ought the complainant to pay, or can he, under these circumstances, be compelled to pay, any portion of the rent which he covenanted to pay by the lease? Let us see how the parties stood on the first of April when, by the lease, the term was to commence. The defendants, the lessors, were under an implied covenant which was as much a part of the contract and as obligatory as any portion of the writing, to put the complainant into the full and perfect possession of the demised building. For a failure to do so they were liable to be prosecuted upon the implied covenant, for the damages the complainant had sustained, and they could only relieve themselves by establishing some fact which would exonerate them from the performance of any other obligation. (*Chitty on Cont.* 318. *Grannis* v. *Clark,* 8 *Cowen,* 36.) They were also bound to deliver possession of the premises, in the same condition, substantially, as they were in when the agreement was made; or the complainant was not bound to enter and occupy, or to pay rent in case he did not. (*Cleves* v. *Willoughby,* 7 *Hill,* 83.) It is clear, therefore, that until the term commences and possession is given of the demised premises, the lease is an executory contract on the part of the lessor; for the breach of which he may be prosecuted in the same manner as upon any other executory contract. And so it is on the part of the lessee. Before the term commences he has only an *interesse termini* and no estate; a right to a term at a future day; but there is no privity of estate between the parties until the term commences and possession is given. (4 *Kent's Com.* 96.) Until then the lease is not operative as the conveyance

of an estate. The lessee can maintain no possessory action. The rights of the parties rest in mere contract. The surrender of the possession by the lessor to the lessee is obviously a condition precedent to the right of the former to demand, or the obligation of the latter to pay rent. If the lessor refuses to give possession, surely he can have no claim to the payment; and I think it equally clear that he has none where he is unable to do so. In either case the consideration on which the promise to pay rent rests fails, and there is no principle upon which it can be enforced.

Here, on the first of April, the building which the defendants had agreed to give the complainant possession of is destroyed. It is their loss. They are unable to perform. Yet being wholly in default they refuse to cancel the lease, and call upon the complainant to fulfil its stipulations on his part. The claim is manifestly unjust, and cannot be enforced.

The well established rule that a tenant is bound to pay rent according to the covenants in his lease, notwithstanding the destruction of the premises during the term, has no application to this case. Courts of equity, in view of the manifest injustice of compelling a party to pay for that of which he could have no enjoyment, struggled long and hard against the adoption of that rule. But it has been too long and well settled to admit of doubt or question. (3 *Kent's Com.* 465, 6, 7. 4 *Paige,* 355.) It need not however be extended, and there can be no necessity or excuse for extending it to a case like this. There is good reason, where the landlord has performed on his part and put the tenant into possession, for holding the tenant to his obligation to pay, but it does not apply to a case where the landlord fails to give possession according to his agreement, and is himself entirely in default.

We are not asked to dismiss the bill on the ground that the complainant has a good defence at law to the action against him for rent. That defence is not set up in the answer, or insisted upon in the argument. On the contrary, the defendants insist that their claim for the first quarter's rent is a legal and valid claim. Although I am clear that the complainant has a

good defence at law, still I regard it as a case where the jurisdiction of equity is unquestionable, and ought to be exercised, to prevent injustice in future. The defendants may, with the same propriety, for aught I can see, at some future day set up their claim for every quarter's rent through the whole term of eight years ; and thus subject the complainant to constant apprehension and vexation.

I am of opinion, therefore, that the decree of the vice chancellor dismissing the bill should be reversed, and that a decree should be entered, requiring the defendants, within ten days after notice of the decree, to surrender the lease in question to the clerk of Monroe county to be cancelled, and perpetually enjoining them from prosecuting said lease at law for the recovery of rent ; and that they pay the costs which have accrued in the suit at law, and also the costs of this suit.

