Willard, J.
The supreme court intimated an opinion that the testimony was too doubtful to warrant a decree reforming the lease, concurring, in this respect, with the vice-chancellor ; but they held that the destruction of the premises by fire, before the commencement of the term, excused, the plaintiff from the payment of rent; and that in equity, the defendants were bound, when requested, to surrender the lease.
The reason why a court is reluctant to disturb the verdict of a jury on a mere question of fact, and why they will not disturb it on a mere difference of opinion as to the weight *481 of evidence, when it has been fairly submitted to them, is that the jury is the appropriate tribunal to decide questions of fact; that they have peculiar advantages, by seeing and hearing the witnesses testify, to determine the degree of credit to be given to them; and that from their intercourse with the world and observation of human conduct, they are more capable than a more secluded tribunal to appreciate the force of the various circumstances which attend a transaction. None of these reasons present any obstacle to the review by an appellate court, of a decree founded on testimony not taken in the presence of the court whose decision is under review, but before examiners out of court and reduced to writing. We have the same means which the courts below had, to form a correct conclusion from the testimony before them. The Code obviously contemplates that this court has the power to review every actual determination of the court below, whether based upon fact or law. (§11.) I shall therefore, proceed, but with the deference due to others, to examine the testimony in this case.
The court below did not give the proper force to the circumstance. that the witness called by the plaintiff was the only one who, from the nature of the case, could be presumed to know the facts in dispute; that he was an unwilling witness for the plaintiff, and obviously anxious for the success of the defendants; and that he was strongly interested in his own exculpation. They remarked, indeed, on his reluctance to testify to facts bearing against the defend- ' ants, but did not draw such deductions from his conduct as the case required.
In weighing evidence introduced to prove or disprove a given hypothesis, the intrinsic probability of the fact sought to be established is not to be overlooked. It requires less evidence to prove a fact that is highly probable in itself, and which is in accordance with the general course of business, than one which is improbable, or which stands in a state of indifference. We may draw inferences from facts disclosed *482 by a prejudiced or an unwilling witness, which would scarcely be admissible if he was impartial and unbiassed.
If the complainants’ hypothesis, that it was agreed betweeen the parties that the lease should contain a clause terminating it on the destruction of the building by fire, be the true one, the witness, Wentworth, who was the person employed to draw the lease, and who, the hypothesis assumes, left out that clause by mistake, is under a strong temptation to suppress the fact in his own exculpation. The admission of it involves an acknowledgment of his own carelessness, or incompetency in his profession, or of an act of fraud towards the complainant. His pride, aside from other motives, would prompt him to conceal or disguise a fact, so derogatory to his professional character. The manner in which he answered the interrogatories of the plaintiff’s counsel was such as to entitle the latter to the rights of cross-examination of his own witness.
From the testimony of the witness, it appears, that the lease was filled up by him in his office, on the day of its date, 8th November, 1843. Before drawing the lease, the witness put on a little memorandum the directions given to him by the parties with reference to the contents of the lease. This memorandum, he admits, he kept until after the building was burnt; and that it has since been lost. At the time the instructions for the lease' were given, there was a conversation between the parties in relation to inserting in the lease a clause that it should terminate if the building was destroyed by fire. The defendants made the inquiry whether the lease would terminate on the building being destroyed by fire, and the witness told him it would not, unless a clause to that effect was inserted in the lease. The complainant was present at that time, and spoke about having the clause to that effect put into the lease. But the witness could not tell whether he was particularly requested to insert that clause, but could tell if he had the memorandum. If the testimony closed here the inference would be quite *483 strong that both parties agreed to the insertion of that clause. It was, however, left out, and the witness says, that if it was on the memorandum, it was omitted in the lease by mistake.
The inference that such was the bargain is strongly fortified by what followed. On the twenty-ninth December, and two months before the building was burnt, the plaintiff discovered, as he says for the first time, that the clause in question was omitted. He procured his attorney to draw up a separate instrument, to be signed by all the parties, agreeing that in case the said building should be injured or destroyed by fire or otherwise, or either of said buildings should be destroyed as aforesaid, then the lessee should be discharged therefrom and the lease be null and void. He carried this instrument and the lease to the store of the defendant, Hubbell. The attorney who drew the lease, Went-worth, was then sent for, and came to Hubbell’s store, where the plaintiff then was. Hubbell asked him what would be the effect, if the buildings should be burned before the expiration of the lease, and the witness answered that he supposed it would terminate the lease. The plaintiff then said there had been such a clause inserted, or should have been inserted in the lease. Hubbell then asked the witness, why, if it was his understanding, that that clause should be inserted, he did not insert it in the lease ? To this no answer was given. Hubbell then handed the witness the leases, together with the writing which the plaintiff’s attorney had prepared, and consulted him as to the propriety of signing it; and told the witness if he could insert a clause in the lease he was willing. The witness took them to his office for examination ; and while there drew an instrument, which would have the effect, if executed, to terminate the lease if the building should be destroyed by fire. He returned the lease to Mr. Hubbell, together with the instrument he drew. This instrument was not produced in evidence by the defendants. The reason why Hubbell would not sign the instrument pre *484 pared by the plaintiff’s attorney was that it was not such a thing as he was willing to sign, because it said if the building or any part thereof should be destroyed by fire, it should end the lease. This was the only objection, he made to it, except he said the inside of the lease was the proper place for it.
This is very strong evidence of the existence of the agreement, as claimed by the plaintiff. The objection of Mr. Hubbell to the agreement, drawn up by the plaintiff’s attorney, was well founded. The effect of it would have been to avoid the lease, on the burning of a small part of the premises. No such agreement was probably made by the parties. But if no agreement of any kind had been made contemplating the termination of the lease on the destruction of the premises by fire, would Mr. Hubbell have entertained the question of alteration or correction for a moment? Would he not have said at once, the lease as drawn contains the whole agreement as we made it, and I will consent to no alteration without a further consideration. Would he have requested his attorney to examine the lease and see in what blanks he could insert the agreement ? Would he have said that the inside of the lease was the place to insert it rather than to have it on a separate paper ?
The conduct of the defendant Hubbell, by whom the whole business on the part of the defendants was conducted from first to last, is consistent with no other hypothesis than that set up by the plaintiff Presumptions from a man’s conduct operates in the nature of admissions; for as against himself, it is to be presumed that a man’s actions and representations correspond with the truth. (2 Stark. Ev., 688.) Numerous and most important presumptions are founded merely on the common and ordinary experience of mankind.. They are derived also from the course and habit of dealing in a particular trade or business, as that the parties intended to contract according to the usual course of dealing. (Id., 688.) In this case, it is every day’s experience that a clause *485 like that claimed to be inserted by the plaintiff, is almost invariably contained in every lease of buildings. It is such a safeguard as eveiy man of ordinary experience would require, and which every fair-minded landlord would grant. It is obvious, from the testimony, that it was not forgotten on this occasion.
At the time the negotiation for the lease was going on, the defendants made the inquiry whether the lease would terminate on the buildings being destroyed by fire, and was answered by his attorney that it would not, unless a clause to that effect was inserted in the lease. When he was sent for by Hubbell on the twenty-ninth December following, in consequence of the complaint of the plaintiff that no such clause was in the lease, the defendants again asked him what would be the éffect if the building should be burned before the expiration of the lease, and the witness gave for answer that he supposed it would terminate the lease. This answer is inconsistent with his former answer, unless the witness believed that the fire clause had been in fact inserted in the lease. If the plaintiff’s hypothesis be true, both answers of the witness can be reconciled. The answers, in fact, go far to corroborate that theory; and the witness added, that he thought it was the understanding between the parties that there should be such a clause in the lease.
It must be remembered that the conversation at the store on the twenty-ninth December, was two months before the buildings were burnt, and when neither party could be supposed to be under any inducement to misrepresent the facts. Neither party anticipated the calamity which befel the defendants so soon. They had no controversy about it. And both leases, together with the memorandum prepared by the plaintiff’s attorney, were handed to the person who drew the lease and who was the witness in this case. The parties did not attempt to make a new agreement. The plaintiff wanted the original agreement carried out, and the defendants had no objection. The attorney who drew the lease was- *486 expected to find a place in the lease where the agreement could be inserted, or to prepare a separate one which would conform to the original intention. He pursued the latter course, and delivered the leases and the prepared instrument to the defendants. This instrument was drawn within about six weeks of the original contract, and was intended to be so framed as to carry out' the original agreement. It was drawn up at a time when the facts were fresh in the recollection of the parties, and their attention had been called to it by the conversation at the defendants’ store. That prepared agreement was delivered to the defendant, Hubbell. Why has it not been produced by him on this trial ? Why has it been withheld by the defendants ? According to the testimony of the attorney, already adverted to, that agreement, if executed, would have the effect to terminate the lease if the building should be destroyed by fire. How came he to draw an agreement in that form, unless such in truth was the original contract ?„ If the witness is mistaken, it was in the power of the defendants to set him right by producing the paper itself. His failure to do so is a silent admission that the paper spoke the truth, whatever may be the case with the witness in some parts of his testimony. If the issue was on trial before a jury at nisi pins with this evidence orally given, and they were asked whether the parties agreed that the fire clause should be inserted in the lease, not a jury could be found who would not answer in the affirmative.
If such agreement was made, there is no doubt it was omitted to be inserted by the neglect or mistake of the scrivener. It is clear from the authorities that the court has power to re-form the lease, and to order it to be given up and canceled. If the omitted clause were inserted, the lease would have terminated when the buildings were consumed. Substantial relief is given to the complainant, in conformity to the bill, by decreeing that the lease should be given up and canceled. Such was the decree of the *487 chancellor in Gates v. Green (4 Paige, 355). That the court can correct mistakes in written agreements, see Wiser v. Markly, 1 J. Ch. R., 607; Gillespie v. Moore, 2 Id., 585; Keisdback v. Livingston, 4 Id., 144; Storey's Equity, Vol. 1, §§ 153, 155, 156, 161, and the cases there cited.
But if the court do not coincide with me in the above, we must then examine the grounds on which the supreme court decided. The main objection to sustaining the views of the supreme court arises from the shape of the pleadings. The bill was not drawn with a double aspect; nor did the pleader contemplate other relief than that which I have proposed to give him. It is difficult, without an alteration of the frame of the bill, to grant the relief, under the general prayer. No amendment was asked for in either court.
But assuming that this obstacle is removed, or is shown to be unfounded, it remains to consider, whether the tenant is liable on an express covenant for rent where the premises leased are destroyed by fire between the time when the lease is executed and that when the term commences, and before the tenant ever had the actual possession. The cases which hold that the tenant is liable, after the destruction of the buildings by fire, upon his covenant for rent, are all cases where the tenant had entered under his lease, and the term had actually commenced before the fire. Such was Hallett v. Wyler (3 J. R., 44); Mark v. Cooper (2 Stark., 763). And this is assumed to be the case in every instance where the doctrine has been advanced, even where the fact is not expressly stated. (Fowler v. Note, 6 Mass., 63; Balfour v. Weston, 1 T. R., 311; Holtzapffel v. Baker, 18 Ves., 115; Leeds v. Chuthan, 1 Sims., 146; Philips v. Stevens, 16 Mass., 238; Green v. Gates, 4 Paige, 355; Stockwell v. Hunter, 11 Mitc., 448.)
The lessee of premises to commence at a future day has only an interesse termini between the date of the lease and the commencement of the term. (Kent's Com., 97; Co. Lit., *488 270 a, 345 b, 46; 2 Bl. Com., 144, 314.) An interesse termini is a right to the possession of a term at a future time. It is a mere interest in contradistinction to a term in possession ; and its essential qualities arises from the want of possession. (4 Kent, 97.) A release to him, says Littleton, before entry, is void. (Lit. 3, § 459 ) The estate does not vest in him until entry. (2 Bl. Com., 144, 314; Co. Lit., 46; Crane v. O’Conner, 4 Edw. Ch. R., 409.) And a judgment against him creates no lien on the premises. (Id.)
, It seems to follow that a destruction of the premises by ■fire, between the making of the lease and the commencement of the term, discharges the tenant from the obligation of his covenant to pay rent. The loss must fall upon the landlord and not upon the tenant. The latter is prevented from taking possession without his fault, and it is inequitable that he should be compelled to pay for the use of that of which he can have no enjoyment. To him it is the same as if the premises bad been made less valuable by the landlord himself. (See Morse v. Willoughby, 7 Hill, 83.)
If the court think we are at liberty to consider this branch of the case, the judgment should be affirmed.
Gardiner, Mason, Morse ana Taggart, Js., concurred in affirming the judgment on the ground first discussed in the preceding opinion. The court expressed no opinion upon the question whether the lessee was discharged from his obligation to pay rent by the destruction of the building before the commencement of the term, without a re-formation of the lease.
Ruggles, Johnson and Jewett, Js., dissented.
Judgment affirmed.