It has long been the doctrine of the English courts, as well as our own, that upon a lease for years, with a covenant to pay a stipulated annual rent, the rent is payable by the lessor to the end of his term, though the property be destroyed by fire (Paradine v. Jane, All., 27; Monk v. Cooper, 2 Stra., 763; Belfour v. Weston, 1 Term, 310; Weigall v. Waters, 6 Term, 488; Hallett v. Wyler, 3 John., 44; 3 Kent's Com., 612), and that the lessee has no relief against an express covenant to pay the rent, either at law or in equity, unless he has protected himself by a stipulation *Page 502 
in the lease, or the landlord has covenanted to rebuild. (Gates
v. Green, 4 Paige Ch., 355; Fowler v. Balt, 6 Mass., 63;Philips v. Stevens, 16 Mass., 238.) Harshly as this rule operated in many cases, it was deemed so firmly settled in this State, that in 1860 the legislature interfered, and, by statute, provided, "That the lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupation, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied." (Laws of 1860, ch. 345.) The foundation of the rule, as stated by Sergeant WILLIAMS, in his note to Walton v. Waterhouse (2 Saund., 422), is this: "When the law creates a duty, and the party is disabled to perform it, without any default in him, and he has no remedy over, the law will excuse him; but when the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." In a case where a lessee binds himself, by express covenant, to pay the rent during the term, and there is no exception in the lease of casualties by fire, notwithstanding the house should be burnt down by accident, he is bound to pay, for the simple reason that he has bound himself by an express covenant to do so.
But it is said that another principle controls where the demised premises (as in this case) consists of rooms in a building and not the whole building, viz.: that by a total destruction of the building containing the rooms, the lease itself, and all rights and interests under it, terminate. The argument by which the contract of letting is avoided, and the lessee is absolved from his express covenant to pay the rent during his term, is ingenious, but I think without authority to support *Page 503 
it. The contract of the lessee, it is claimed, is distinguished from ordinary contracts by the peculiar character of the payment he undertakes to make, that is, to pay rent, which is defined to be a certain profit issuing yearly out of lands and tenements corporeal, in retribution for their use; and when the estate, out of which the rent issues, is gone, and the thing demised no longer exists, nothing remains to support the covenant, or out of which the rent can issue. But if there can be any solid distinction between an express contract to pay rent for demised premises; and any other ordinary contract, growing out of the fact that the estate demised has absolutely ceased to exist, that would not be this case. It is conceded that if the defendant had been the lessee of the entire building, though it had been totally destroyed by fire, he would have been bound to pay the rent; and that in such case it could not be said that the estate, from which the rent was to issue, had ceased to exist. Nor, when the demised premises consist of parts, and not of the entire building, can the lessee's estate, in contemplation of law, be considered as gone. The building is a part of the land, and there may be several distinct tenements under the same roof; and tenements are as essentially distinct when one is under the other, as when one is by the side of the other. (Long v.Bacon, 4 Mass., 575; Cheesebrough v. Green, 10 Conn., 318;Proprietors of Meeting House in Lowell v. City of Lowell, 1 Metc., 538.) There can be no doubt that the subject matter of the demise, in this case, was, in the eye of the law, as much land as the soil on which the building stood. A lease of a distinct portion of a house is a conveyance of an interest in real estate. (Sprigg v. Rauburn, Cro. Car., 554; Inman v. Stamp, 1 Stark., 10.) Can it, therefore, make any difference that the land is leased in distinct portions to several instead of but one tenant, or because it may become physically impossible for each of the tenants to rebuild or reconstruct his portion of the demised premises, he is exonerated from his covenant to pay the rent? I think not. But whether one of several tenants of rooms in a single building *Page 504 
is to be regarded as having any tangible interest in any portion of the land covered by the building or not, or whether a lease of rooms in a building carries only an estate in the particular rooms demised, and upon a total destruction of the building, no estate, in legal contemplation, remains, out of which rent can issue, still the tenant having covenanted to pay the rent, would be liable on his covenant. No legal distinction, growing out of the peculiar character of the payment to be made, can be taken to relieve him from his express undertaking to pay. When the lessee of demised premises covenants to rebuild, he is bound to do so, although the tenement be destroyed by the elements, without any default on his part, for he has, by his own contract, created the duty or charge upon himself. So also (says Sergeant WILLIAMS), he "is bound to pay the rent during the term, though the house should be burnt or blown down, if there be an express covenant for payment of the rent, for the same reason and upon the same principles, that he is bound to rebuild, namely: because he has bound himself by an express covenant to pay the rent." (Walton
v. Watertown 2 Saund., 422, note 2.) This was undoubtedly the rule of the common law, and it was only competent for the legislature to change it, which has been done since this action arose.
The facts found do not show an eviction. The landlord removed the ruins of the walls of the building, and other rubbish, and the tenant removed the machinery, brickwork and materials which had been introduced by him, and this without objection from either party. The new building erected by the plaintiff does not reach upon any portion of the space demised to the defendant, but the same has remained vacant and unoccupied since the fire. The fact is not found that the landlord took possession of the ruins for the purpose of rebuilding, without the consent of the tenant; nor with his assent. Indeed, all that was done, so far as the demised premises were concerned, was the removal, by both parties, of a certain quantity of rubbish, c., therefrom. *Page 505 
I think the judgment should be reversed, and that of the City Court of Brooklyn affirmed.
DAVIES, J., also dissented.
Judgment affirmed.