HARRY W. HIZINGTON and Another, Appellants, *v.* ELDRED REFINING COMPANY OF NEW YORK, INC., Respondent.

Fourth Department, May 25, 1932.

*Melvin & Melvin* [*Crandall Melvin* of counsel], for the appellants.

*Bailey, Oot & Ryan* [*Albert J. Oot* of counsel], for the respondent.

EDGCOMB, J. This is an action for rent. The plaintiffs are the owners of certain real estate situated on the southerly side of James street in the city of Syracuse. For many years the

property has been used as a garage and gasoline curb filling station. On March 24, 1927, the plaintiffs leased to the defendant the space lying between the garage building and the southerly side of James street, which was stated in the lease to be " approximately 88 feet long and 24 feet wide," for a term of five years from and after April 1, 1927. The premises were to be used and occupied " for the distribution and sale of gasoline, oil, greases and petroleum products."

Defendant occupied the premises until May 9, 1929, when it vacated the property, and notified the plaintiffs in writing that it elected to declare the lease void for the reason, among others, that the use and occupation of the land for the purposes for which it was rented were illegal and contravened the rules and regulations governing the storage and sale of gasoline, which had been adopted and proclaimed by the commissioner of public safety of the city of Syracuse.

This action followed to recover the rent for the month of May, which, under the terms of the lease, was payable in advance on the first of the month. The defense is constructive eviction.

In 1928 the commissioner of public safety of the city of Syracuse adopted and promulgated various rules and regulations governing the storage, handling and sale of gasoline and other volatile, inflammable, liquid explosives. Among these measures we find the following: " All gasoline filling pumps shall be at least ten feet back from the street or property line. Automobiles shall not stand on city property while being filled."

These rules were adopted pursuant to the authority granted by section 17 of chapter 685 of the Laws of 1905, which imposes upon the commissioner of public safety the duty of promulgating and enforcing regulations governing the sale of explosive, combustible and inflammable substances.

Appellants insist that this enactment has a prospective application, and does not affect property which was under a lease at the time of its adoption. Such claim is not sound. The order of the commissioner declared that the regulations should take effect January 25, 1928. There is nothing in the wording of these rules which indicates an intent on the part of the commissioner that the provision above quoted should not apply to property which was used at the time for the sale of gasoline, even if it was under lease. In fact, the contrary is quite apparent. It is said that *all* gasoline pumps *shall* be at least ten feet from the property line. No exemption is made. No motor vehicles, except those belonging to the city, are excepted from the prohibition that automobiles " shall not stand " on the property of the city while being

filled. It is obvious that these regulations applied to the demised property the moment they took effect.

The premises in question could not be used for the purposes for which they were rented without violating these rules and regulations. The space between the garage and the southerly side of James street was but ten feet, and not twenty-four feet as specified in the lease. There were three gasoline pumps in front of the building, and they were approximately but eight feet from the street or property line. They could not be moved back, because they were up against the building; defendant could not put them in the garage, because no part of the structure was included in the lease except the office at the extreme northeast corner. There were fills at the curb opposite the pumps, but they could not be used, because to do so would require the automobile to stand upon the public street and upon city property, and that was forbidden.

The defendant had covenanted in the lease to " comply promptly with any local or State regulation in the matter of the conduct of such business." As it turned out, this was impossible.

Under these circumstances we think that the defendant was justified in abandoning the premises, and that such abandonment will support a plea of eviction, although there was no actual entry or physical disturbance of defendant's possession. (*Fifth Ave. Bldg. Co.* v. *Kernochan,* 221 N. Y. 370; *City of New York* v. *Pike Realty Corp.,* 247 id. 245; *Hart* v. *City Theatres Co.,* 215 id. 322; *Shontz Co.* v. *Laffay,* 225 App. Div. 263; *Doherty* v. *Eckstein Brewing Co.,* 198 id. 708.)

It is true that there was no covenant for quiet enjoyment in the written lease itself, but one will be read into it. (*Fifth Ave. Bldg. Co.* v. *Kernochan,* 221 N. Y. 370.) That covenant has been breached here.

The use of the demised premises in the condition they were in being illegal, the lease became void at the election of the tenant, and no recovery can be had thereon. (*Noble* v. *Great American Ins. Co.,* 200 App. Div. 773, 780; affd., 235 N. Y. 589; *Shontz Co.* v. *Laffay,* 225 App. Div. 263.)

Courts will not be over zealous to enforce a contract, the effect of which would weaken the efficacy of a regulation designed for the protection of property or human life. (*Hart* v. *City Theatres Co.,* 215 N. Y. 322.)

It matters not that the property could have been lawfully used for the purposes for which it was rented when the lease was made. There can be no distinction in principle between a contract, the execution of which is unlawful at the time it was made and which is void, and one where the further performance thereof becomes

unlawful because of some subsequent change in the law. (*Doherty* v. *Eckstein Brewing Co.*, 198 App. Div. 708.)

It is true that the city never attempted to compel obedience to the order which it had made so far as the defendant is concerned, and that the respondent continued to use the demised premises as a filling station from January 25, 1928, until May 9, 1929, without interference or objection on the part of the public authorities. The fact that the commissioner of public safety did not enforce these regulations did not make defendant's conduct lawful, or exempt the premises from the prescribed mandate.

While no penalty is prescribed for the violation of these rules, the act under which they were promulgated declares that no one shall sell or offer for sale any gasoline except in accordance with such order. Defendant could have been compelled to comply with these regulations. It was not obliged to invite a lawsuit, or to wait until it was called to account for its violation of the law, before it could claim an eviction. These are days when compliance with the law should be encouraged, and not penalized.

We think that the learned court below was correct in holding that there was a constructive eviction here which released the defendant from the obligation of paying rent so long as the ordinance prevented the use of the demised property for the sale of gasoline.

The case was tried upon the broad ground that the lease, by reason of the adoption of these rules and regulations, had become void at defendant's option, and the question which appellants urge on this appeal, that they are at any rate entitled to recover for the rent of May, 1929, was apparently overlooked and not pressed to the attention of the trial court.

Under the lease the rent was payable in advance. This action is brought to recover the stipulated rent for the month of May, 1929, which became due on the first of that month. Defendant was in possession of the demised premises on May first, and at that time had not elected or sought to terminate the lease. It was not until nine days later that it vacated the property, and gave notice that it chose to declare the lease void.

There can be no constructive eviction unless there is a surrender of the possession of the premises. It would be incongruous and inconsistent, as well as unjust, to permit a tenant to remain in possession of leased property, and, when sued for the rent, to plead an eviction by showing facts and circumstances which would have justified him in leaving the premises. (*Edgerton* v. *Page*, 20 N. Y. 281, 285; *Boreel* v. *Lawton*, 90 id. 293, 297; *City of New York* v. *Pike Realty Corp.*, 247 id. 245, 247.)

Because of the fact that the defendant was in possession of the

property when the rent sued for accrued, we think that the plaintiffs are entitled to judgment. For this reason the judgment appealed from should be reversed, and judgment should be ordered for the plaintiffs in the sum of $200, and interest thereon from May 1, 1929, together with costs.

All concur.

Judgment reversed on the law, with costs, and judgment directed in favor of plaintiffs for the sum of $200, with interest thereon from May 1, 1929, with costs. One conclusion of law disapproved and a new conclusion made.