JOSEPH A. SCHANTZ, Plaintiff, *v.* AMERICAN AUTO SUPPLY COMPANY, INC., Defendant.

Supreme Court, Monroe County. August 8, 1942.

*Dwyer, Shearer & Dwyer* [*David Shearer* of counsel], for the plaintiff.

*Whitman, Dey & Nier* [*George J. Nier* of counsel], for the defendant.

VAN VOORHIS, J.   This action is brought by landlord against tenant to recover unpaid rent for the month commencing May 10, 1942, under a store lease containing the provision: " premises to be used for the sale of tires, radios, washing machines and refrigerators."   The term of the lease is for three years from March 10, 1940.   The answer sets forth an affirmative defense that the sale of the articles enumerated in the lease " has been prohibited' by the United States Government and that as a result of the order of said government the defendant has been evicted from the said premises."   On this motion plaintiff asks that this defense be held to be insufficient in law upon its face.   The answer contains no separate statement that defendant has vacated, but the use of the word " evicted " in that context means that defendant has surrendered the premises and thereby elected to terminate the lease by reason of the action of the government. (*Hizington* v. *Eldred Refining Co. of N. Y., Inc.*, 235 App. Div. 486, last paragraph on p. 489.)   Enough is stated so that any lack of explicitness should be resolved in favor of the pleading.   It would have been helpful if the answer had referred to the particular orders of the executive branch of the Federal government whereby it is claimed that sale of these articles of property has been forbidden, so that their exact terms and provisions might be before the court.   A Federal statute provides

that judicial notice is to be taken of them if they have been published in the Federal Register. (49 U. S. Stat. at Large 502, effective July 26, 1935. See also *Ingersoll-Rand Co.* v. *U. S. Shipping Board E. P. C.*, 195 App. Div. 838, 840.) On the other hand, judicial notice may not commonly be used to aid pleading or as a mode of bringing controversies into court or stating them. *(Levy* v. *Delaware, Lackawanna & Western R. R. Co.*, 211 App. Div. 503.) Defendant, in order to succeed upon the trial, will be obliged to present for the scrutiny of the court the executive orders which it claims prevented it from conducting the business for which these stores were rented, and to present facts and figures showing how they have affected its business. These orders may fall somewhat short of what is claimed for them in the answer. This is not a motion to correct the form of the answer, however, but for judgment granting the relief demanded in the complaint. That should not be done without allowing defendant opportunity to supply any informalities in the answer, which may be open to a motion to make more definite and certain, but ought not to be held insufficient in law if it states a good defense in general terms. Accordingly, for the purposes of this motion, it will be assumed that Federal orders have been issued forbidding all sales of types of merchandise and appliances described in the lease as stated in the answer. If, actually, the measures taken by the government do not go so far as that, there will be opportunity to consider the effect of any variance when the action is tried.

Undoubtedly the Congress of the United States proceeding under the war powers conferred upon it by the Constitution *(Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146) could authorize the President by means of some executive agency to prevent the sale of such articles provided that in his judgment such prevention is necessary to carry on the war. The Congress has authorized him to proceed by section 301 of the Second War Powers Act, 1942 (Public Law 507, 77th Congress, effective March 27, 1942; U. S. Code, tit. 50, Appendix, § 633) which states " deliveries of material under all orders placed pursuant to the authority of this paragraph and all other naval contracts or orders and deliveries of material under all Army contracts or orders shall, in the discretion of the President, take priority over all deliveries for private account or for export," and " Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appro-

priate in the public interest and to promote the national defense." The said act provides likewise that " the President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the government as he may direct and in conformity with any rules or regulations which he may prescribe." These provisions supply a sufficient legal foundation for the departmental orders which the answer alleges have been promulgated preventing the sale of defendant's stock in trade.

It is important to analyze the legal basis for these war measures even though plaintiff has not questioned that they are binding, for the reason that when they are regarded in their proper perspective, the nature of the defense to this action loses its novelty and falls into the categories of established law. The exigencies of the present " total " war require a more complete integration of the personal and material resources of the nation than previously, and greater restrictive measures have been resorted to, but the legal principle remains the same as that enunciated by the Supreme Court of the United States in *Hamilton* v. *Kentucky Distilleries Co.* (*supra*), which upheld the constitutionality of the wartime prohibition act adopted in 1918. The liquor traffic could not have been outlawed by Congress in peace time without an amendment to the Federal Constitution, but under the war powers, and independently of the Eighteenth Amendment, it was held that in its judgment Congress could provide for the regulation of the sale of liquor " and, if reasonably necessary, forbid its sale in order to guard and promote the efficiency of the men composing the army and navy and of the workers engaged in supplying them with arms, munitions, transportation and supplies." (P. 155.) In this war the sale of intoxicants has not been forbidden as a matter of policy, but Congress is legally empowered to authorize prohibition of the sale of tires, radios, washing machines and refrigerators to conserve materials or labor for the war effort by the same token whereby a quarter of a century ago it could prohibit the sale of liquor. The opinion in the *Hamilton* case points out that, although the United States Government lacks the police power which is reserved to the States by the Tenth Amendment, when the United States acts under the war powers, its exercise thereof " may be attended by the same incidents which attend the exercise by a State of its police power." (P. 156.) That places the present question in its true relationship to the law to be applied. The effect of the action by the government on the defendant's obligation to pay rent is the same as though the purposes of this lease had been frustrated by a valid exercise of the police power of the State, which is a type of controversy that

has been adjudicated in favor of the tenant. *Hizington* v. *Eldred Refining Co. of N. Y., Inc.* (*supra*), in this department, held that the tenant of premises to be used and occupied " for the distribution and sale of gasoline, oil, greases and petroleum products " would have been evicted constructively, if it had vacated the premises, in consequence of a police regulation subsequently issued by the commissioner of public safety of the city of Syracuse restricting the handling of gasoline in such manner as to render impossible the use of the premises for the purposes stated in the lease, citing *Fifth Avenue Building Co.* v. *Kernochan* (221 N. Y. 370); *Shontz Co.* v. *Laffay* (225 App. Div. 263); *Doherty* v. *Eckstein Brewing Co.* (198 id. 708) and other cases. The *Shontz* case held that a tenant was justified in vacating the premises and cancelling a lease made for the purpose of conducting the business of automobile painting and body building, after a determination by the New York city fire department that such business could not be conducted in that location. It was held in the *Doherty* case that a lease of premises to be used for the saloon business was terminated by operation of law upon the taking effect of the Eighteenth Amendment to the Federal Constitution and the National Prohibition Act. It is true that in *Raner* v. *Goldberg* (244 N. Y. 438) a lease for a dance hall was enforced notwithstanding inability to obtain the necessary municipal license for that purpose, but there the court pointed out that the parties understood when the lease was signed that such a license would need to be obtained and deliberately chose not to insert a condition invalidating the lease in case of failure to secure the license. The point involved herein was not decided, but the court said: " We assume for the purpose of this appeal that where parties enter into a lease exclusively for a use which is not illegal when the contract is made but such use becomes illegal by change of law, the lease is thereby terminated. We do not pass upon or decide such question. Courts of other jurisdictions have differed in regard to it. In such case it may perhaps be said that the value of the lease is destroyed by circumstance not within the contemplation of the parties when the lease was made, or even that a lease of premises to be used in a business subject to public regulation is impliedly subject to a condition that change of regulation shall not make the contemplated use illegal." (*Raner* v. *Goldberg, supra*, 440.) In *Gates* v. *Green* (4 Paige 355, 357), Chancellor WALWORTH said: " It appears to be a principle of natural law, that a tenant who rents a house or other tenement for a short period, änd with a view to no other benefit except that which may be derived from its actual use, should not be compelled to pay rent any longer than the tenement is capable of being used." In

the case at bar the answer alleges that this tenement is no longer capable of being used for the purposes defined in the lease by reason of action of the government lawfully undertaken in the prosecution of the war.

Plaintiff contends that the lease in this case does not restrict the use of the premises by the tenant to the sale of tires, radios, washing machines and refrigerators because it does not say that it shall be devoted to these purposes exclusively. The word " only," it is asserted, would be necessary to accomplish that result. The established rule is that a tenant may occupy and use the leasehold in any lawful way in the absence of restrictions contained in the lease. (*Presby* v. *Benjamin,* 169 N. Y. 377.) That being true, it would have been unnecessary for the parties to the lease in this case to have specified that the premises were to be used for any particular purposes unless the object were to confine the nature of the occupancy to those purposes. If the intention was, as now claimed by the plaintiff, to allow these stores to be used in any legal manner that the tenant might desire, there would have been no object in mentioning that it was to be devoted to the purposes above stated. The premises could have been used for those purposes or any other lawful business. The clause is presumed to have been inserted to serve some object (*Gail* v. *Gail,* 127 App. Div. 892, 896), and hence must be interpreted to mean that the purposes stated are exclusive. (*Weil* v. *Abrahams,* 53 App. Div. 313; *Kaiser* v. *Zeigler,* 115 Misc. 281; *Orvis* v. *National Comm. Bank,* 81 App. Div. 631.) Plaintiff erroneously contends that *Bovin* v. *Galitzka* (250 N. Y. 228) holds otherwise. That case stands upon its own facts. The lease therein was held to contain a provision permitting by implication uses for any business or purpose except those deemed disreputable or extra hazardous on account of fire. That clause was held to nullify a previous designation of the premises for a real estate office. No similar circumstance complicates the lease at bar. The lease in *Hizington* v. *Eldred Refining Co. of N. Y., Inc. (supra),* decided in this department, was phrased similarly to the instant lease.

The restriction by the landlord of the use of these stores for the purposes stated creates a special equity in favor of the tenant. If the tenant were to be held to its covenant to pay the rent, then the premises must remain idle because they can be utilized for no other purpose by the tenant without violating the lease. On the other hand, if the lease is cancelled, they can be used by the landlord for any lawful purpose.

Defendant contends that the essential purpose of this lease has been frustrated regardless of whether the lease limits the use of

the premises to the purposes stated. That question need not be decided on this motion inasmuch as it is held that the purposes enumerated are exclusive.

In deciding this motion in favor of the tenant, it is not the purpose of the court to rule categorically upon all matters of this nature, nor to do more than to hold that the answer is sufficient in law. No decision is made concerning whether the result would be different if it were to appear that some but not all of the types of merchandise and appliances described in the lease were forbidden to be sold, or that the sale of some or all of them was permitted but in reduced quantities. Neither is it intended to decide what different effect, if any, might be produced by a lease for a long term. The demise in this action is for three years, more than two of which have already elapsed. As stated by the Appellate Term in *Colonial Operating Corp.* v. *Hannan Sales and Service, Inc.*, (178 Misc. 885), there is nothing of which the court can take judicial notice that warrants a conclusion that the restrictive measures imposed by the Government will end during the current year.

It is not thought that the English common-law rule summarized by Chancellor KENT " that upon an express contract to pay rent, the loss of the premises by fire, or inundation, or external violence, will not exempt the party from his obligation to pay the rent," (3 Kent's Commentaries [14th ed.] 466), should destroy the defense in this case. Chancellor WALWORTH took occasion to demonstrate that this old common-law rule runs counter to that of most of the other legal systems of the world. (*Gates* v. *Green, supra.*) It has been considered inequitable under New York State legislative policy since 1860 in case of destruction by fire or the elements. (Real Prop. Law, § 227.) It has been stated by some courts that at common law if the interest of the lessee in demised premises has been destroyed by act of God or the public enemy so as to render the subject-matter of the lease incapable of beneficial enjoyment by the tenant, the rent should be abated. (*Graves* v. *Berdan*, 26 N. Y. 498, 500; *Whitaker* v. *Hawley*, 25 Kan. 674, 689; *Taylor* v. *Hart*, 73 Misc. 22, 28; 18 So. 546; *Coogan* v. *Parker*, 2 S. C. 255.) The last case, decided in South Carolina, arose during the Civil War, involving a saloon which was closed by the military forces of the Confederacy, and was likewise rendered untenantable on account of being in range of the Union artillery in the bombardment of Charleston. The court, after an extensive discussion of the law, held that the tenant was obliged to pay rent but only because he resumed possession after the war. That, in this instance, will be impossible for the purposes of the lease unless the present conflict ends before March 9, 1943, when this lease expires, or unless the

ban on sales of such articles is sooner lifted which is improbable. In 1787, the Supreme Court of Pennsylvania did hold a tenant to his covenant although he was deprived of the beneficial enjoyment of his Philadelphia tenement due to occupancy by the British army under General Howe while Washington's army was at Valley Forge. The court stated that it entertained grave doubt concerning the correctness of its decision. (*Pollard* v. *Shaaffer*, 1 Dallas 210.) A similar case, *Paradine* v. *Jane* (see 3 Kent's Commentaries [14th ed.] 466) appears to have been disposed of in the same manner in England by the King's Bench during the Civil Wars in the reign of Charles I. Those three decisions are the only ones that have come to attention relating to dispossession of a tenant as a result of the action of hostile military forces in war. In the *South Caro'ina* case the court indicated that whole or partial abatement of rent would be in order. Those decisions should not be confused with the instant case. The defendant here claims to have been ousted not by the enemy but by the lawful action of the government of the United States, and to be entitled to the same redress which has been allowed to tenants by the courts of this State who have been constructively evicted under the police power. The New York decisions on this latter subject are manifestly controlling requiring denial of the plaintiff's motion for judgment on the pleadings.

*Colonial Operating Corp.* v. *Hannan Sales & Service* (178 Misc. 879) involved similar facts, and the court stated that cancellation of the lease by the tenant would have been upheld if the tenant had vacated the premises. (*Signal Land Corp.* v. *Loecher*, 35 N. Y. Supp. [2d] 25.)

Plaintiff's motion for judgment on the pleadings is denied, with ten dollars costs to abide the event.