Burke, J. (dissenting).
The claim here is solely to recover rental for a period when the tenant was no longer in occupancy. By a covenant, in a two-year lease commencing March, 1953, the landlord assumed the burden of obtaining a certificate of occupancy covering the use of the premises ‘ ‘ by the Tenant for warehousing and shipping of its goods ”. At the time, therefore, that the lease was made, the new use authorized under the lease concededly was unlawful (Administrative Code of City of New York, § C26-185.0; Shontz Co. v. Laffay, 225 App. Div. 263).
The documentary proof shows that the application for a certificate of occupancy was not dated nor filed until June, 1954, after a delay of 14 months. During the period from March, 1953 until April, 1954, a representative of the tenant complained repeatedly to the landlord in regard to the delay and reminded the landlord of its neglect to secure the certificate of occupancy as agreed. When the tenant’s patience had worn thin, a written notice was sent on April 27, 1954 to the landlord stating that the certificate of occupancy had not been granted as required by the lease, and that the continued occupancy by the tenant for the uses authorized by the lease would be in contravention of law. The landlord was informed that, unless a certificate of occupancy was issued in accordance with the landlord’s undertaking in the lease, the defendant would quit and remove from the premises on June 30, 1954 and deem that the date of the termination of the lease and its obligation to pay any rent for any subsequent period. No certificate of occupancy authorizing the use of the premises for the purposes described in the lease *567 was obtained or granted, and the tenant vacated the premises and surrendered possession of the premises on June 30, 1954 and has not been in possession or occupancy since that date.
A mere recital of the facts reveals the failure of the landlord to use due diligence to obtain the certificate of occupancy despite the prodding from the tenant.
When no time for performance of the obligation of obtaining a certificate of occupancy is fixed in a lease, a landlord is ordinarily entitled to a reasonable time within which he may comply with such a covenant.
In this case the obligation to exhaust all available remedies to secure the certificate was the landlord’s. Nevertheless, the landlord took no effective action until after the written demand had been made. In granting more than a year of grace, the tenant gave the landlord more than a reasonable opportunity to secure the certificate of occupancy. The failure to secure the certificate resulted in a continued unlawful occupancy of the premises, constituting a breach of the covenant. Such a breach of an essential term of a lease prevents any recovery of the rent reserved in the lease, after the tenant has abandoned the demised premises.
Under the construction of the lease adopted by the majority opinion, the tenant would be obliged to pay rent for the entire term of the lease without regard to the landlord’s expressed agreement to provide premises which might be lawfully used and occupied. We believe that the obligation to pay rent was dependent upon the covenant to obtain the certificate. The landlord has failed to perform at any time prior to the expiration of the time set in the 60-day notice. It should not now be allowed to recover the rent claimed for nonoccupancy. (Hizington v. Eldred Refining Co., 235 App. Div. 486; De Angelis v. White-All Corp., 273 App. Div. 873.)
The contention that the tenant was responsible for the delay in the issuance of the certificate of occupancy is, of course, frivolous. The lease provided that the demised premises were to be “ used and occupied by the Tenant for warehousing and shipping of its goods ”. The landlord knew at the time the lease was made that the tenant’s goods included inventories of paints and thinners, the combustibles referred to in the opinion of the trial court. The landlord recognized the presence of the *568 inventories of paints and thinners among the goods of the tenant in its application to the Fire Department to include combustibles. This application was withdrawn, and no further effort was made to comply with the law in that regard. The final issuance of the certificate on July 8, 1954 resulted solely from the fact that the defendant had vacated the premises and removed its goods. The certificate of occupancy then issued was without meaning as the landlord had made no attempt to secure the certificate of occupancy authorizing the storage of the tenant’s goods and combustibles. The tenant did nothing other than what it was permitted to do under the lease throughout the entire time of its occupancy.
The conduct of the tenant and the excuses of the landlord show that the parties intended that if the tenant did not have ■ the right to use the premises lawfully and did not occupy them, it should not pay rent for them (cf. Rosenthal Paper Co. v. National Folding Box & Paper Co., 226 N. Y. 313, 320, 321).
The plaintiff’s position that it had not exhausted all remedies, and, in effect, that the tenant was required to continue in unlawful possession even if it took the plaintiff the balance of the term to exhaust all available remedies, is patently a sham in the light of the facts developed at the trial. Instead of proceeding diligently to pursue all available remedies, the landlord did not even approach the municipal authorities until it was spurred into action by the summary notice of termination of the lease served by the tenant. Its unreasonable delay and its negligence. in seeking a restricted certificate of occupancy' denote an intention to evade the obligation assumed under the terms of the lease.
Here there was no waiver of performance of the provision relating to the certificate of occupancy. The tenant had on numerous occasions pressed the landlord to take action. Finally realizing the excuses given by the landlord were not bona fide, the tenant served the notice on the landlord hoping thereby to compel the landlord to secure a proper certificate of occupancy. (Cf. Krausi v. Fife, 120 App. Div. 490; Marks v. Dellaglio, 56 App. Div. 299.) The landlord, faced with the termination of the lease, pretended to comply by filing an improper application which failed to disclose the nature of the tenant’s goods which were to be warehoused on the premises even though it was *569 acquainted with the character of the tenant’s business. Under the circumstances the tenant was justified in asserting a constructive eviction against the claim for rent due after the abandonment of the premises. The constructive eviction occurred before the rent became due. (Herstein v. Columbia Pictures Corp., 4 N Y 2d 117.)
Accordingly, the judgment of the Appellate Division dismissing the complaint should be affirmed.
Chief Judge Conway and Judge Van Vooehis concur with Judge Feoessel; Judge Fuld concurs in a separate opinion; Judge Bueke dissents in an opinion in which Judges Desmond and Dye concur.
Judgment reversed, etc.