Haight, J.
This action was brought for an accounting between copartners. On November 19, 1877, the parties hereto entered into a written contract to form a copartnership to manufacture and sell varnishes and japans. The co-partnership was to continue until December 31, 1880. The plaintiff was to put in seventy-five thousand dollars in cash, and the defendants their factory buildings and the grounds *344 upon which the same were situated, which was to he contributed as a part of their capital stock, upon a valuation agreed upon of fifteen thousand dollars, at which sum they agreed upon the liquidation of the business to take the property back.
Thereafter, and on February 6,1879, the buildings upon the factory property were destroyed by fire. At the time the buildings were insured on behalf of the firm, who collected of the insurance companies, as damages, the sum of $2,942.65. On the termination of the copartnership the plaintiff claimed that it was the duty of the defendants to' take the real estate back at the sum of $15,000, less the amount of insurance collected as damages on account of the fire. The defendants claiming that the buildings upon the premises having been destroyed by fire, they were released from the provisions of the contract and were not obliged to take the premises back. The value of the premises at the time of the dissolution appears to have been about $6,000.
In determining this question it becomes important to have in mind the relation of the parties under the contract, in order that we may properly distinguish between the different lines of authorities relied upon by the opposing parties. When the articles of copartnership were entered into, the defendants executed and delivered a deed of the premises to the individuals composing the firm. The title therefore vested in the firm. Under the articles of copartnership the defendants agreed to take the premises back at the stipulated sum of $15,000. The firm having the title would have to reconvey the property to the defendants. The agreement was therefore in effect an agreement to purchase the property at the termination of the copartnership and to pay therefor the stipulated price.
Benjamin on Sales, at section 570, states the rule as follows : “It is no excuse for the non-performance of a condition, that it is impossible for the obligor to fulfill it if the performance be in its nature possible. But if a thing physically impossible, quod natura fieri non coneedit, or be *345 rendered impossible by the act of God, the obligation is at •an end.”
Story, in his work on contracts, at page 1076, says: But in contracts from the nature of which it is apparent that the parties contracted on the basis of the continued ■existence of a given person or thing, a condition is implied that if the performance become impossible from the perishing of the person or thing, that shall excuse such perform•ance.”
In the case of Wells v. Calnan (107 Mass. 514) the plaintiff had agreed to sell the defendant a farm at a price •agreed upon to be paid for at a future day specified, and on the payment of the purchase price the plaintiff was to execute and deliver the defendant a deed of the premises. Subsequently the buildings upon the farm were destroyed by fire. Thereafter and at the time agreed upon the .plaintiff tendered a deed and demanded the contract price, which was refused, and subsequently action was brought to recover the amount. It was held that he could not recover. Gbay, J., in delivering the opinion of the court, says : a When property, real or personal, is destroyed by fire, the -loss falls upon the party who is the owner at the time, and' if the owner of the house and land agrees to sell and convey it upon the payment of a certain price, which the purchaser ^agrees to pay, and before full payment the house is destroyed by accidental fire, so that the vendor cannot perform the agreement on his part, he cannot recover or retain any part •of the purchase money.”
In the case of Dexter v. Norton (47 N. Y. 62) the •action was brought to recover damages for a breach of contract to sell and deliver a quantity of cotton. The defendant had agreed to sell to the plaintiff six hundred and seven bales of cotton at a price agreed upon. A portion had been ■delivered, but one hundred and sixty-one bales were accidentally destroyed by fire without fault or negligence on the part of the defendants. Subsequently cotton rose in value and the plaintiff claimed the right to recover the increase in *346 value on the bales destroyed. It was held that the cotton did not vest in the vendee at the time it was destroyed by-fire ; that thereafter the delivery was impossible, and that the plaintiff was not entitled to recover.
In the case of Kein v. Tupper (52 N. Y. 550), the plaintiff had contracted to sell the defendant one hundred and nineteen bales of cotton. The cotton was to be weighed and samples taken and compared with the original before delivery, and the plaintiff delivered to the defendants an order upon the warehouse where the cotton was stored, for the same, and the defendants endorsed upon the order a direction to re-store for them and delivered it to the warehouseman. Upon the next day seventy bales of the cotton were weighed and samples taken. That, night forty two of the bales, together with those not weighed, were destroyed by fire. It was held tha1" there was no delivery and acceptance so as to pass the title; that the compliance which waste precede delivery was not complete until the samples taken out had been compared with the original samples; that a destruction of the cotton without fault of the plaintiff,, relieved him froman action for damagesfor non-performance.
In the case of Smyth v. Sturges (108 N. Y. 495) the-plaintiff’s assignor entered into a contract with the defendant in which he agreed to sell certain lots upon which there-were stores. At the time of the agreement there were various fixtures, consisting of partitions, gas pipes, plumbing, etc., in the stores, which had been put in by tenants, whoafterwards and before the deed was tendered, removed them from the stores. In an action to recover damages it was-held that the defendant was entitled to the stores in the condition that they were in when the agreement was made,, and that a refusal to take them after the fixtures had been removed, was not a breach of the contract.
In the case of Clark’s appeal (72 Pa. St. 142) the parties-had entered into a partnership agreement, by which one had contributed real estate at an estimated value, which was-carried into the firm’s stock account to his credit, he still *347 retaining the legal title, and reserving the right to withdraw the property upon the dissolution of the firm. Subsequently the buildings were destroyed by fire, but were rebuilt with new and more expensive buildings by the firm. It was held that he could not thereafter withdraw the property ; that the fire had rendered it impossible to perform the conditions of the contract; that the loss fell upon the partnership, and it having re-constructed the buildings, that they were new and different from those existing at the time the contract was made, and that he did not have the right to-withdraw them. (See also Rugg v. Minett, 11 East. 210 Clinton v. Hope Insurance Co., 45 N. Y. 454, 466; Thompson v. Gould, 20 Pick. [Mass.] 134; Herring v. Hoppock, 15 N. Y. 409).
It will be observed that under the authorities to which we have referred, the question as to who shall sustain tireless depends largely upon the determination of the question of ownership, and this rule is expressly recognized by Pomeroy in his work on specific performance, at section 322, cited by the respondent, in which he states that <£ the effect of events occurring after the point of time which fixes the interest of the parties, is wholly different from that of prior events. At that period, although the contract isexecutory in form and is treated as wholly executory at law, the equitable beneficial estate in the subject matter passes to the purchaser, and he becomes, in contemplation of equity, the real owner. He therefore takes the benefit of all subsequent improvements, increases, gains, rises in value and other advantages happening to the property. On the other-hand, the subject matter is at his risk and he must bear all losses, total or partial, from fire or other accidental causes, or from trespassers and all depreciations in value and other-disadvantages res perit domino. But the latter proposition is subject to the most important modification, namely : that the loss or depreciation does not happen from the neglect, default, or unwarrantable delay of the vendor in carrying out the contract.”
*348 Applying the principle stated in these authorities to the -question under consideration, we find that the copartnership was the owner of the premises, having the legal title thereto ■at the time the fire occurred, and had the premises insured. That the defendants were not the owners, legal or equitable. They did not have an insurable interest in the premises. It is true that they had agreed to purchase the premises at a I time fixed upon in the future at a stipulated price, but that ( agreement had reference to the existence of the property in (substantially the same condition, reasonable use and wear •excepted, that it was in at the time the agreement was made, and at that time the factory buildings were in existence. Since then they have been destroyed by fire and the value of the property has largely depreciated in consequence thereof. The defendants did not agree to purchase the premises with- • out the buildings, and it is no longer possible for the plaintiff or the members of the copartnership to convey and give title to that portion of the premises destroyed by fire.
We are, therefore, of the opinion that performance of the contract in that regard can no longer be enforced.
The respondent states' that the burning of the buildings • did not harm the defendants, as the insurance companies offered to rebuild the buildings. No such fact, however, •appears to have been found b.y the referee. It does appear that he was requested to so find by the plaintiff, but that the request was refused. We have examined the authorities referred to by the respondent and those relied upon by the referee, but it does not appear to us that they are in point or bear upon the question under consideration.
A tenant does not occupy the position of a purchaser -under a contract of sale, or come within the same rule. Neither does a contractor who has undertaken to furnish ■the material and construct a house on the land of another, where the same has been destroyed by fire before the house was finished and delivered, as was the case of Tompkins v. Dudley (25 N. Y. 272). There can be no doubt about that .-rule. If you go to a wagon maker and order a carriage *349 made, lie cannot recover the contract price until he delivers-the carriage. The fact that it was burned or destroyed when partially built is his loss : not yours. It does not,, however, appear to us that this or kindred cases cited are in. point or bear upon the question under consideration.
The case of Paine v. Meller (6 Ves. Jr. 349, 352), was-disposed of upon the ground that the party had become in equity the owner of the premises at the time of the fire, and is consequently in harmony with the cases to which we.' have already referred.
Some question has been made in reference to the form’, of the exceptions taken by the appellants. The criticism is-well founded as to most of them, but an exception to the third conclusion of law in that the item, factory account,. $12,961.88, should have been stated therein at $6,000, we think is good and sufficient in form. It is the item in controversy and which is involved in the question which we-have discussed.
We are therefore of the opinion that the judgment should be reversed and a new trial ordered with costs to» abide the event.
All the judges concurred.
NOTE ON THE TRANSFER OF FIRE RISK UNDER A CONTRACT TO' PURCHASE.
In conveyancing, the question where the fire risk is, pending an executory contract to purchase, is important as well when' we act for the vendor in drawing or settling the terms of the contract, or in clearing title and closing, or for the purchaser in drawing or settling the contract, or in accepting possession, before closing, or delaying to close, or to take possession after closing.
on the case in the text will do much towards settling; and' as the decision is in harmony with American usages and the weight of opinion, it will doubtless be followed generally.
The hitherto prevailing uncertainty cannot better be indicated than by contrasting the statement of an attornev and conveyancer of experience (Geo. W. Van Si cien, Esq., in “The Ileal Estate Kecord Guide to Buyers and Sellers of Beal Estate”}? *350 of the rule as putting the risk on the buyer, and that of Prof. Langdell, of Harvard, writing in the Harvard Law Review; for Mr. Van Siclen says (atp. 44) :
“ Sometimes after a contract is signed the house burns down, or careless blasting in the neighborhood, injures it, or the premises are otherwise damaged ; the buyer then objects to paying the full amount of the consideration ; but the law is that he must pay in full. Courts of equity consider .that a valid contract obliges the seller to give a deed of the land to the purchaser, and they hold that whatever ought to be done should be considered already done, and they look upon the seller as a trustee of the land for the buyer; hence the buyer gets all the benefit, if there be any increase in the value of the property after the contract is signed, as from a new' railroad or a park, or any other public or -private benefit; and he has to stand ail the loss or decrease of value that maycomej w'EHher'thcweather damages it, or some part decays, or it burns up, or is battered down by accident, or destroyed by a mob ; he must, in any event, pay the full price to the seller, unless, indeed, the seller himself should do some wrongful act of waste upon the premises, which would give the buyer a valid claim against him for damages.”
The same view is advocated as preferable to the contrary, in an article in 12 Centr. L. J. 77.
This rule seems to be fully sanctioned by the English authorities, see Poole v. Adams, 12 Weekly Rep. 683, quoted in case below, and confirmed in Rayner v. Preston, cited on p. 351 below.
On the other hand Prof. Langdell (1 Harv. L. Rev. 359) says :
“ If a contract be made for the purchase and sale of land which has buildings on it, and, after the making of the contract, but before the conveyance of the land, the buildings be casually destroyed by fire, upon whom will the loss fall ? At law it will clearly fall upon the vendor in all cases. The buildings belong to the vendor, and res perit sui domino. If the loss happen before the time fixed for completing the purchase has arrived, the vendor will be unable to perform the contract on his part, and, therefore, he can never enforce it against the vendee. The vendee will not, indeed, be able to en force the contract against the vendor either, because the act of God will excuse the latter from performing his contract qua contract, though it cannot relievo him from the consequences of failing to perform it qua condition. The contract, therefore, will never be performed, nor will any liability he incurred for not performing it. Each of the parties to the contract *351 will, therefore, be in the same situation as if the contract had never been ■made. If, on the other hand, the loss happen after the time fixed for completing the purchase is past, it will equally follow that the contract will never be performed, for it will have been broken by either the vendor or the vendee, or by both. If broken by the vendor, his liability in damages will not be reduced by the loss ; if broken by the vendee, the vendor’s right to damages will not be enlarged by the loss; if broken by both parties, of course neither will be able to recover ■against the other, and it will be as if the contract had never been made, or as if it had been rescinded by mutual consent.
What is the rule in equity in such a case ? Clearly it ought to be the same as at law—if the loss happen before the time fixed for completing the purchase has arrived, for in that case the consequences of the loss will be the same in equity as at law, namely, that the vendor will be unable to perform the contract on his part. It is true that ■equity may enforce the contract against the vendee, notwithstanding the destruction of the buildings, but if it does, it must do iso because the breach of condition by the vendor did not go to t.he essence of the contract, and hence the performance by the vendee must be with com-h pensation for the loss of the buildings, i. e., the value of the buildings! must be deducted from the purchase-money to be paid by the vendee. If, on the other hand, the fire happen after the time fixed for completing the purchase is past, the loss will, in equity, fall upon the vendee, i. e., the vendor will be able to throw the loss upon the vendee by enforcing specific performance of the contract in equity, assuming, of course, that he is in a condition to enforce such performance. The reason of this is that, when performance of a contract is enforced in equity, the performance is held to relate back to the time fixed by the contract for its performance ; and hence, if performance be enforced in the case supposed, equity will regard the land as having belonged to the vendee when the loss happened.
“ Such is the rule which ought to prevail in equity.”
He goes on to say that recent English authorities have thrown the subject into confusion. Since the decision of the cases he condemns, one of them has been reversed.
The circumstances of the reversal, and the resulting state of English law and practice at the present time are this :
In Rayner v. Preston, 18 Ch. Div. 1; s. c., 44 L. T. R. N. S. 787; affi’g 14 Ch. Div. 297; s. c., 43 L. T. R. N. S. 18, it appeared that the owner of a freehold, having insured the house, contracted for the sale of the premises without making any stipulation as to the insurance. Before the time fixed for conveying, the house was burned; and thereafter the ven - *352 dor collected bis insurance, but refused to pay it over to the-purchaser, or to allow it as so much in deduction from the price ; and the purchaser sued to compel him to do so.
Jessel, M. R., following Paine v. Meller, 6 Ves. Jr. 349, and Poole v. Adams, 12 Weekly R. 683, dismissed the bill with costs (14 Ch. Div. 297; s. c., 43 L. T. R. N. S. 18).
The court of appeal, by the opinions of Brett and Cotton, JJ., affirmed this decision. . The ground was simply that in. the absence of a clause as to insurance, a contract of sale would not assign the right under the policy. James, L. J., dissented on the ground that the vendor became a trustee of the money for the purchaser.
The judges suggested that perhaps the company were entitled to recover the money back from the vendor who had sold the premises before the fire.
In Castellain v. Preston, such an action was brought on the ground that the plaintiff’s insurers had paid the money in ignorance of the fact that the purchaser had paid the vendor in full. Chitty, J., refused to sustain it (8 Q. B. Div. 613; s. c., 46 L. T. R. N. S. 569).
The court of appeal (in 11 Q. B. Div. 380 ; s. c., 22 Am. L. Reg. N. S. 769 with note) unanimously reversed this decision, on the ground that insurance is a mere indemnity, and the-insured, having been paid for his building, sustained no loss.
The London Law Times, which in 1881 had fully approved of the decision in Rayner v. Preston (see article copied in 13 Centr. L. J. 165), probably expressed the general opinion of the profession in England, when it said, in 1883, in commenting on the reversal of Castellain v. Preston (Mar. 17, vol. 74, pp. 348, 351), that the decision of Chitty, J., in that case,, and the case of Rayner v. Preston had “ indicated a blot in our legal system, which however has been partly removed by the court of appeal reversing the former base this week.” It. added, “ Still it is desirable that in drawing contracts for sale* the benefit of any fire insurance should be included.”
This is the custom of English conveyancers now, both in contracts, and in terms of sale under judicial proceedings.
The usual form is as follows :
“ If the said premises or any part thereof shall be destroyed or damaged by fire before the completion of the purchase, the moneys payable under the existing insurance of the said premises in the office, shall be applied in reinstating the-same, or shall be paid to the purchaser at his option.” Prid. Conv. 11 ed. 91.
The English rule is that deterioration of the premises, committed or permitted by the vendor before the time fixed for convevance of it. makes the property substantially different contract was made, or from the- *353 description, given in the contract by the vendor, entitles the purchaser to rescind or to have compensation.
The reasons for the difference between the English and the American rule grow out of the historical origin of the English deed of bargain and sale, and the different usages of conveyancing in the two countries, under the registry and the non-registry systems. The deed of bargain and sale, in its original form, which to some extent it still manifests, was itself little more than a contract of sale. It was not a conveyance but a contract to convey. And courts of equity turned it in effect into a deed by applying the maxim that what ought to be done must be regarded as having been done (see for instance William’s Real Prop., 165.) Hence it came naturally to be the law that a formal conveyance made after and in pursuance of a contract of sale, must be given relation back to the date of the contract. It is even now the custdm of many conveyancers to date their deeds back to the day of the contract, and there are cases where, under our law, equity would give a deed this effect whatever its date, in order to protect the rights and effectuate the intent of the parties.
There was a time when the usages of purchase, still obtaining in rural districts in this country, treated the contract as the foundation of a possession on credit, and the vendor withheld title until payments were completed. Under the present law of mortgage securities, the contract is only the foundation for a payment of earnest money to bind the bargain, and for incurring the expense of examining title ; and the deed is regarded as the foundation for possession, and a purchase money mortgage stands as the security for any credit given, in lieu of retaining the title after possession given.
1 Hence the tendency of sound opinion under modern usages I of conveyancing in this country is to regard the contract as, personal and executory, not affecting the title, but preliminary to the transaction which it contemplates is to affect the title.. But whenever the nurchaser takes possession the title is affected.. If he, without having taken possession, defaults in closing, the-risk is or may be thereby transferred. Without taking possession he has an insurable interest; and various circumstances-may transfer the full risk to him, but the mere existence of a. contract to purchase does not necessarily have that effect,, either at law or in equity.
The result of the American authorities is that the clause-usual in many printed blanks sold here, stipulating that in, case of fire the loss shall fall on a specified party, is a clumsy-expedient, and dangerous to adopt in this unqualified form, for-it might throw the loss upon him when equity would not do so ;; *354 and might also embarrass the recourse of one or the other party upon his insurance.
It is safe to provide that a specified party shall not be liable to the other for an injury to the premises if it occur without negligence on his part, and when he is not in possession nor in default. And any stipulation as to insurance should be arranged on with the insurance company.
And it is of the first importance that he who sees that In’s client when purchasing is likely to be in delay, should secure a valid extension of time, or advise him to protect himself by insurance ; and should have the protection of insurance also if he accepts possession under the contract.

Notes of Oases.

The following cases are stated at sufficient length to illustrate both the significance now attached to the nature and terms of the contract, .and to the hearing on the rights of the parties,' of the various elements ■of possession, default, delay, etc., which may be involved.
1. General American rule.] Wicks v. Bowman, 5 Daly, 225. "Vendor against purchaser for damages for refusal to complete contract' ,made May 18th, 1872, by which plaintiff agreed to sell and convey, and •the defendant agreed to purchase and to take the said “ lot of land with ¡all buildings and improvements thereon,” for a price to be paid—$500 -down on signing the contract, another part by mortgage, and by assuming another mortgage, and the balance “in cash on delivery of the ■deed, which is to be delivered on June 18th, 1872.”
An answer was held good on demurrer which set up that at the time the contract was entered into, a dwelling-house was standing upon the said land of the value of $7,000, “ which was the chief value of the premises,” the 7-8 of the value, and the contract was entered into by defendant , solely to acquire residence for himself and family. ' That the house was totally destroyed by fire about May 29th, 1872, and defendant never had possession, but that at time of tender of deed by plaintiir (vendor) defendant had offered to complete the purchase if plaintiff would replace the house by a similar one, but that plaintiff had refused so to do. The court (reviewing the earlier English cases) held that the vendee could not, on principle, be regarded as the owner of the property until the time fixed for performance on both sides by the delivery of the deed and payment of purchase money, etc., and that the equity doctrine (that what ought to be done must be regarded as already done) would apply only after the time for performance, and therefore as the fire occurred before the time for performance the vendor must be regarded as the owner and the one to sustain the loss.
But the court in a dictum added that where by the contract “ the *355 vendee is let into the actual possession, or has by the contract the Immediate right to it, there is a reason for his bearing the loss, if the building is subsequently destroyed by fire, as he has entered upon the beneficial enjoyment of the property.” And the court seems to ■approve of the doctrine quoted from Tabor v. Robinson (36 Barb. 483, 486) that for some purposes, a vendee has an equitable interest (in every ■case of contract for purchase of land) from the time of the making of the contract—such as being “ entitled to the usual remedies of those having equitable interests to prevent waste and injury and alienation to .others, until the time appointed to execute the contract, but that is all.”
2. — buildings the chief valué]. Smith v. McCluskey, 45 Barb. 610. Action by assignee of vendor of land and buildings, for the last three installments of purchase money. Defence was that the ven■dor could not give good title, and also that before the installments became due, and while the vendor (or his assignee) was still in possession, the building, which was the chief value of the premises, was destroyed by fire, and the defendant also claimed to recover back the money he had paid on the contract. Judgment for defendant on all the issues. Held, that as the contract was still executory as to title, which (as matter of law it seems in this case) was to be convejmd on payment of balance of purchase money, the vendor was still the owner, and was still in possession when the fire occurred, and as the building was the chief value, it followed that the vendor could not perform on Ms part-—(in fact there was a failure of consideration) —and hence the vendee was not bound to complete by paying installments not yet due, but on the contrary was entitled to recover back from vendor’s assignee "what he had already paid. [This last point is disapproved in Touraman s. Edgerton, 91 N. Y 403, 411, i. e., as to liability of vendor’s assignee.]
[Note.—The court held, 1st, that the vendor could not give a good title, and on other points cited Tabor v. Robinson, 36 Barb. 483, and Wood v. Hubbell, 5 Barb. 601, among other earlier cases. The contract does not clearly appear in this case, but time for delivery of deed had ■evidently not arrived at the time of the fire.] ' '
3. Fire before title is cleared.] In Christian v. Cabell, 22 Gratt. 82, on appeal from a decree on a motion to compel purchaser to complete where approval of the sale had first to be obtained from the court, the decree for specific performance was reversed on the ground (among others) that as the vendor had not shown a good title the purchaser could not be compelled to complete, especially as the property had been destroyed before the vendor had cleared the title.
The contract recited that the vendor had sold a house and lot to the *356 vendee for $10,000, part was to be paid down when deed was given, and! the rest in yearly installments, etc. The deed was to be given as soon, as the approval of the court (being trust property) could be obtained. Possession was to be given by July 15th, 1870. Deed approved by court was tendered by the vendor just before July 15th, 1870. Thevendee refused to take the property because of defects in title, and. gave notice that delay would be fatal to his plans, and at a subsequent date he notified the vendor that he repudiated contract on. ground of defects in title and delay.
The fire occurred pending the subsequent legal proceedings to compel, completion, and at a time when defects in title still existed. The court reviews the English cases, and deduces from them the rule that “any loss-occurring to the property before the vendor” is “in a position to convey a clear unincumbered title, must fall on him, and not on the-purchaser.”
In a previous part of the opinion the court said in cases of this sort it was important to inquire at what period the purchaser must be-regarded as the owner. “He certainly must be so considered from the-date of the bargain, where the vendor is in no default and is prepared to-convey a clear title. But if, according to the laws, a court of equity will not compel the purchaser to accept a title which the vendor cannot make out to be clearly good and free from incumbrance, how is the purchaser to be regarded as the owner till those' objects aré effected,, and the vendor is prepared to make the title according to the contract ?”
Judicial sales; and sales of trust property by leave of court distinguished.] The court also first discussed the question whether this was a judicial sale, and held that it was not such a sale, and in a dictum laid down the proposition that a judicial sale, differed from a private sale, in that the court did not guarantee title, and the purchaser must be regarded as purchasing with that knowledge, and hence would be regarded as the owner from time of purchase, lb.
4. Vendor's express reservation of possession for a time, in deed.] Mott v. Coddington, 1 Abb. Pr. N. S. 290. Purchaser’s action for damages for not delivering possession of a mill and machinery, and also damages for the loss of the mill by fire, etc., caused by defendant’s negligence while in possession. The contract was for exchange of the-premises on which was situated the mill in question in New Jersey, for-premises in Brookyn, N. Y. The deeds were to have been exchanged at the office of counsel in New York “on or before ” July 22, 1861. It was also agreed that defendants should continue in possession of the mill in New Jersey until September 19, 1861, when they should deliver possession to plaintiff. (The deed however of the mill, etc.,. *357 was expressed to be “ subject nevertheless to the possession of said premises by said defendants until September 22,1861, when they agree deliver possession of the same ” to the plaintiff.)
The deed of the mill property was executed on June 26, and that for the Brooklyn property on July 16 ; but the deeds were not then exchanged, but left in the hands of certain lawyers, at whose office they were to be exchanged on July 22, as aforesaid, until certain liens on the Brooklyn property could be removed ; and while the deeds thus remained and defendants were in possession, the mill, etc., were destroyed by fire on August 13. The deeds were exchanged on Aug. 16, after the fire, and the plaintiff gave the defendants notice in writing that he should hold them responsible in damages for the loss of the mill, and requiring them to replace the same prior to September 39, ensuing.
The complaint was dismissed at trial, and a new trial denied. Meld, affirming this order on appeal; 1st, that as the land was in N. J., this action for damages to realty because of fire through negligence of defendants would not lie in New York for want of jurisdiction of a local action. 2nd, that the relation between plaintiff and defendants was that of vendee and vendois, and not (as contended) that of landlord •and tenants, for the contract and deed merely created a reservation of possession of premises for a definite period, and they were not bound to deliver possession in same condition as it was at date of contract, and that no action would lie for damages.
That “the plaintiff or vendee became the equitable owner of the v ■estate, and according to well-settled principles, could be compelled to i.pay the consideration even though the estate itself should be destroyed between the date of the agreement and the conveyance (Sugden on Vendors, 6th Am. ed. 468). From the time the contract was stated by ethe parties the premises were at the risk of the vendee who had an -insurable interest, and could have protected himself from loss by fire. At any rate, as he was entitled to any benefit which might accrue to the •estate in the interim between the contract and the deed, he must take the risk, and bear the burthen of the loss.”
But even if this were not so, the acceptance of the deed by the plaintiff after the fire, with knowledge of the loss, would extinguish any right to indemnity he otherwise might have had (Paine v. Meller, 6 Ves. Jr. 349).
[Note.—The court do not discuss the contract relating to July 22nd, the date fixed for transfer of deeds. Counsel in argument stated that ■plaintiff was not ready to give good title to his property until after the ffire.]
5. Delay to talce possession.] McKechnie v. Sterling, 48 Barb. 330. *358 Action at law for the purchase price of an interest in real property.. The plaintiffs owned a leasehold interest in a lot of land for which they paid a yearly ground rent, and having put up a building thereon, occupied by a sub-tenant, they made a contract with defendant by which “ in consideration of $200, agreed to be paid ’’ by defendant, they “ do-hereby agree to convey ” to defendant “ all their right in the property now owned and rented by the parties of the first part.” . . . “And hereby authorize him to take possession of said premises and building immediately.” Within three or four days after the agreement, the building was consumed by fire. About two months afterwards, plaintiff tendered a “release and quit claim of all their interest in said premises and property, and an assignment of the unexpired term ” of their leasehold interest, and demanded the said $200. Defendant refused to complete the purchase, and hence this action. Held, that the “ contract was absolute and vested in the defendant the equitable interest in the-land the moment it was executed and delivered.” The court quoted Sugden on Vendors, based on language in Paine v. Meller, 6 Ves. Jr. 349, and further added in support of the view taken that the vendee had insurable interest in the property after the contract. [Note.—Court added in' a dictum that if it had been a lease, the plaintiffs could have been obliged to give permission before the estate would have vested, or if it had been a sale of personalty the plaintiff would be “ bound to-make delivery before the title would vest, and in the meantime the-property would be at his risk.”]
6. Delay of possession for convenience of parties, during tenancy. JSnqlish rule applied.] Brewer v. Herbert, 30 Md. 301. Vendor’s bill' for specific performance and to enjoin purchaser’s suit to recover back, part of purchase money. The contract, made October 9, 1868, recited that in consideration of $4,000 the said plaintiff “has this day sold to the said” defendant, “his house and half lot,” etc., to be paid as follows : first. $2,000, on April 1,1866, and the rest at subsequent times on installments. Possession to be given on said April 1, [at which time the then present, tenant’s lease expired], and good deed to be given on payment of last installment. In the February before said April 1, the house was destroyed by fire after an insurance policy, held by vendor, had. expired the previous month. Held, citing Paine v. Meller, 6 Ves. Jr, 349, that “ in contracts of this kind between private parties the vendee is ini equity the owner of the estate from the time of the contract of sale, and must sustain the loss if the estate be destroyed between the agreement and the conveyance, and will be entitled to any benefit which may accrue to it in the interim.” . . . “ From the time the owner of am estate enters into a binding agreement for its sale, he holds the same in> trust for the purchaser,” etc.
*359 . . . . “The contract here is not for a sale at a future day; it does not use, in this respect, prospective or contingent terms. Its language is, the vendor 1 has this day sold to ’ the vendee his house and lot, which clearly imputes a binding contract then executed and consummated. By such terms the title in equity passes torn the date of the contract, and, if there were nothing else in it there would be no room for argument, for it would be impossible to withdraw the case from the operation of the rule above stated.” The court then goes on to bold that the provision as to a future delivery of possession was a mere provision for the- convenience of the parties, and was not (as in the case of delivery in a lease) a condition precedent that the premises should then be in the same condition as when the)'- were sold. That delivery of possession was not necessary to pass title in equity, etc. Held also that vendor not bound to keep insurance up for benefit of vendee; if he had done so he would have held insurance interest for 'vendee, etc.
7. Contingent contract at vendor's option.] Lombard v. Chicago Sinai Congregation, 64 Ill. 477. Purchaser against vendors for specific performance. By the agreement the vendors agreed to sell land (upon which was a church) for a fixed price, part down as earnest money, part upon delivery of deed, and the rest in installments, etc. The vendors were to furnish abstracts to be examined within fourteen days, and if there should be any objections to title “it should be optional with vendors to return the earnest money, and declare the agreement canceled,, or to make the title good.”
The abstract was furnished at time of execution of contract, and within the 14 days the purchaser sent his written objections to the title,, and a few days later, on October 6, 1871, notified the vendors in writing-that “ they must obviate the legal objections to this title within a reasonable time, say twenty days, or he should require them to return the earnest money; that if they found” they could not perfect the title, to let him know without delay, and return the said money, and he would cancel the contract. To this no reply was made, nor did the trustees, so far as record showed, 1 ‘ make the election before or within the twenty days from the said notice.” The purchaser had never taken possession, and the buildings were destroyed by fire October 8, 1871, and during the said twenty days and within two or three days after the purchaser gave said notice.
Without any communication to the purchaser, the vendoz-s proceeded after the fire to perfect their title, which was finally made good about February 17, 1872. In April following the vendors tendered a deed, and the purchaser objected to its form and its execution, and then brought this action for specific performance “ as to so much of the *360 property agreed to be sold as the vendors could give him, for compensation for the portion destroyed, and to be exempted from paying the interest accruing by the terms of the contract during the delay in making the title good.”
The vendors answered, claiming to cancel the contract, and offered to return the earnest money, etc., and filed a cross bill to cancel the contract.
Decree below dismissed cross bill, decreed specific performance as to the land, but disallowed claim for compensation and exemption from interest, charging purchasers interest according to terms of contract etc. On this appeal,
’ Held, that the time test as to who should bear such a loss by fire is who was the owner at the time (citing Wells v. Calnan, 107 Mass. ' 514). That in this case there was no completed contract at time of fire, for at time of fire the vendors had not yet received their option (during the twenty days given by the vendee), and because the vendee could not be regarded as the owner in equity at that time, because the vendors had not made their title good and the grant was suspended.
Hence the purchaser (not in default) was entitled to maintain his bill for specific performance as to so much of the property as he can get with compensation to be deducted from the purchase money for the portion of the property destroyed, and the English rule should be applied as to interest, i. e., vendors defendant in possession of rents and profits until a good title is shown, and from that period only, will they be entitled to interest, and the purchaser to the rents and profits.
The court in a dictum approve the equitable doctrine that in equity “ the estate from the making of the contract is regarded as the real property of the vendee, attended by most if not all the incidents of ownership, and the purchase money as the property of the vendor.”
Again: “ the general proposition does not admit of controversy apon the authorities that from the making of an absolute contract of sale, the land is regarded in equity as the property of the vendee, who may dispose of it or incumber it in like manner with land to which he has the legal title subject to the rights of the vendor under the contract.”
In this case the court said the contract was not an “ absolute’ ’ one, and was only contingent, and hence the rule did not apply.
8. — lease containing absolute covenant to purchase.] In Powell v. Dayton, etc. R. R. Co. (12 Or. 488; s. c., 8 Pacific Pep. 544, it appeared that plaintiff leased the premises to the defendant for five years, on a monthly rental, and the lease contained the further provision that •defendant agreed “ to purchase of said Powell and pay the said Powell, on or before the expiration of the said term of five years, the sum of *361 :$5,500, in United States gold coin, for all the said warehouse property,” ■etc.
It seems that the warehouse was washed away before the time for purchase arrived. The action was at law by the vendor for damages for breach of the contract to purchase; and it was contended that the ■destruction of the warehouse determined the contract to purchase. Waldo, C. J., said: “In every contract for the conveyance of property there is an implied condition that the subject-matter of the contract ■shall be in existence when the time for the performance of the contract arrives. That is the contract, the understanding of the parties. If it has ceased to exist when that time arrives, each party is discharged ■.from his contract,—the vendor from his contract to convey, the vendee from paying the purchase price. The rule is that 1 When property, real or personal, is destroyed by fire, the loss falls on the person who is the owner at the time; and if the owner of the house and land agrees to ■sell and convey it upon the payment of a certain price which the pur- ■ chaser agrees to pay, and, before full payment, the house is destroyed by accidental fire, so that the vendor cannot perform the agreement on his part, he cannot recover or retain any part of the purchase money ” (Wells v. Calnan, 107 Mass. 514; Gould v. Murch, 70 Me. 238; Thompson v. Gould, 20 Pick. 134; Taylor v. Caldwell, 3 Best & S. 826; Appleby v. Myers, L. R. 2 C. P. 651; Dexter v. Norton, 47 N. Y. 62; Brumby v. Smith, 3 Ala. 123, cited by counsel in Appleby v. Myers, above). Several cases in equity were cited by the plaintiff’s counsel to ■show that the defendants were the equitable owners at the time of the loss. Under the terms of the contract this is very doubtful. But if it were true, it would make no difference here unless such an estate were ■recognized at law, which it is not.
9. Lease and destruction during interesse termini.] Wood v. Hubbell, 5 Barb. 601 (affi’d in 10 N. Y. 479). Bill to enjoin an action at law for rent upon a lease and (among other things), to compel the surrender and cancellation of the lease: An agreement was made in Nov., 1843, for a lease of “ a tavern stand . . . known as the Mansion house ” for a term of eight years from the following April, 1844, at an ■annual rent of so much per year. In February following, and before "the term commenced, the building was destroyed by fire. After such destruction, and before the term began, the intended lessees called upon the intended lessors to cancel the lease ; but the latter refused, and at the end of the first quarter sued for first quarter’s rent, and hence this bill. Meld, that before the term commenced the lessees had only an interesse termini and no estate—a mere right to a term at a future day but no privity of estate between the parties, and there would be none until possession should be given, and the term commence. Hence, on *362 April 1, as the building contracted for was destroyed, the lessor could' not give possession, i. e., could not perform that condition precedent and as the consideration for which lessees had contracted to pay rent had failed, therefore it would be inequitable to allow the lessor to sue • for rent. Decree dismissing bill, therefore reversed and injunction granted. [Note.—In this case the bill chiefly prayed that the said, lease might first be reformed before cancellation to conform to an alleged agreement of the parties that the lease should contain a clause that “ in case the premises should be destroyed by fire during the term, the lease and all covenants for the payment of further rent should terminate.” But the court held that the evidence of such an agreement was not clear enough to warrant the reformation of the instrument, and that plaintiff was entitled to have the relief of cancellation and injunction on the grounds stated, even without information of the lease. But upon appeal, the court of appeals (10 N. Y. 479) held that the evidence of such an agreement (for a clause of termination) was sufficiently clear, and affirmed the judgment upon that ground, and intimated that as the plaintiff had prayed specially for a reformation it was doubtful whether, without an alteration of the frame of the bill, different relief' could be granted under the general prayer. The court of appeals-expressed no opinion upon the question, whether the lessee was discharged from his obligation to pay rent by destruction of the building-before the commencement of the term without a reformation of the-lease. But the judge (Willard, J.) who wrote the opinion of the court, added a dictum adopting the view of the court below, that such a contract was a mere interesse termini, etc.; and the loss must fall on the lessor.]
10. Fire on first day of lessee’s term.] In Meeks v. Bing, 51 Hun, 329, it appeared that a tenant had taken a lease of premises “for the term of" three years from May 1,1884,” which provided for the payment of thereof in advance on the first day of May, November, August and February, in each and every of said years, and contained a provision that, in case the demised premises should be partially destroyed by fire and not. rendered wholly untenantable, the same should be repaired with all speed at the expense of the leásor; and a fire occurred on the premises-prior to twelve o’clock noon on the first day of May, not rendering; them wholly untenantable. Held, that the tenant must be governed by the provisions of the lease relating to a partial destruction by fire, asunder such a lease the term commences on the first day of May.
11. Oral agreement.] Thompson v. Gould, 20 Pick. 134. Purchaser sued for part of purchase money paid on an oral agreement to-purchase a lot of land and dwelling, vendor to give a title free and clear for an existing mortgage. The purchaser had paid nearly all the pur *363 chase money, and was waiting for the vendor to clear off the mortgage and give a deed; and meantime had placed some furniture, etc., in the-house, and on the same day the premises were destroyed by fire (before any deed had been tendered) the mortgage was cleared off. The deed-was not tendered until a day or two after the fire ; and was then refused. Held, that the contract being oral, was void under Statute of Frauds, and hence plaintiff could recover back the purchase money. But. there is a dictum that even were it otherwise the destruction of ti e house rendered it impossible for the defendant to perform, and hence-specific perfomance could not be enforced. That in case of personalty the loss must fall upon the owner of the property at the time of fire, and the same rule should apply in equity. That the court could not recognize the doctrine that a purchase and an agreement to purchase-are similar.
12. Blew v. McClelland, 29 Mo. 304. Purchaser against vendor, to recover back part payment of purchase money of buildings, and the-land thereunder as to which the buildings were the “principal value.’’ After part payment and before time to pay the balance and take deed, the buildings were destroyed by fire. Held, that plaintiff should', recover because the contract being oral could not be specifically enforced. The court in a dictum,, however, cited Paine v. Meller, 6 Ves. Jr. 349, and Sugden on Vendors as holding that equity looks upon the vendee as the owner after a “ valid agreement to purchase,” and that he-must pay the consideration for the estate even though destroyed by fire. But the court would not extend the doctrine beyond valid agreements,, hence would not enforce an oral agreement as to land.
13. Common law actionfor liquidated damages.] In Wells v. Calnan, 107 Mass. 514; s. c., 9 Am. R. 65. Vendor against purchaser for liquidated damages for failure to complete purchase of a farm and building thereon. The contract was “ to sell” and “ to buy ” for a special sum to be paid", on April 10, 1869, when the deed was to be given. Fire destroyed the buildings the day before the deed was to be given. Deed tendered, and refused. It appeared in evidence that the property was not worth, quite two-thirds as much after the fire as before. The vendor had collected insurance moneys. Held, that the loss falls on owner at time of fire. That here the vendee had contracted for whole property, and the whole property was not in existence at the date the deed was to be delivered, and therefore he could not be compelled to take less than what he had bargained for. The court cites Thompson v. Gould, 20 Pick. 134, and does not retain the doctrine of ownership in equity, but rather puts the case on the ground that the destruction of the thing contracted for, before time to accept it, relieves the purchaser by a sort *364 ■of implied condition, but where he has already become owner, then he ¡suffers the loss. [Being an action at la.w for liquidated damages perhaps the decision of the court was governed strictly by common law principles.]
The contract in Wells «. Calnan, purported to convey a farm by ■metes and bounds, but the only allusion to improvements was a clause, immediately following that which fixed a time and place for closing, and was in the following words: “The manure to remain on the premises and no wood to be cut and removed from the premises save firewood for use in the house. And the said party of the first part, in receiving ■such payment, etc., shall convey, etc.”
Gray, J., said; “The agreement between the parties manifestly contemplates the conveyance of the buildings already upon the land as an •important part of the subject-matter of the contract. It describes the property to be~conveyed as-the farm occupied by the vendor and his •'father, and contains a provision that until the day appointed for the ¡delivery of the deed no wood shall be cut and removed from the premises save firewood for use in the house. The vendor agrees to •execute and deliver a proper deed for the conveying and assuring to the purchaser of the fee simple ‘ of the said premises.’ The price stipulated to be paid is an entire sum; and the report states that it appeared ••in evidence at the trial that the estate at the time of the contract was •worth at least that sum, and after the fire was not worth two-thirds as •much.”
This case of Wells v. Calnan is disapproved in the article on the •subject in 12 Gent. Law Journal, 77, already mentioned.
14. Defence to notes for purchase money.] Where the owner of a 'lot of land with buildings on it agrees to convey it at a future day on payment of notes given for the purchase money and before conveyance •and payment the buildings are destroyed by fire without the fault of ■either party, the destruction of the buildings can be set up by the purchaser as a defense in an action on the notes. [Citing Thompson v. Gould, 20 Pick. 134; Gould v. Thompson, 4 Metc. 224; Wells v. Calnan, 107 Mass. 514; s. c., 9 Am. R. 65.] But in such an action the plaintiff may recover a sum equal to the value of the use of the premises while the defendant occupied them. Gould v. Murch, 70 Me. 288 ; s. c., 35 Am. R. 325.
15. Rescission of contract.] Where the purchaser in a contract for ’the sale of land rescinds on account of the vendor’s default, the pur- ■ chaser is not bound to rebuild or to account for the value of improvements destroyed by casualty. Taylor v. Porter, 1 Dana (Ky.) 421; s. c., 25 Am. Dec. 165.
*365 16. Judicial sale ; fire before confirmation.] Terpenning v. Agricultural Ins. Co., 14 Bun, 299. Action on fire policy: Defence, transfer of interest in property contrary to condition.
During the life of the policy and prior to the fire the premises had been sold by a referee in a partition suit. The purchaser had signed agreement of purchase and had paid deposit, but there was no proof that the sale was ever confirmed or a ¡¿feed delivered. [Report is silent as to when it was agreed, if at all, that the deed should be given.]
Held, (affirming judgment for plaintiff) that until a confirmation of the sale no interest would pass in the property, and the purchaser could not have maintained an action for specific performance; that such a sale under a decree is not absolute and differed from a private contract for sale between an owner and another person, “ because that is binding when executed, and transfers an equitable right to the purchaser. He may enforce its performance.”
Court also added: “ That if (as in this present case) the buildings-had meantime [between judicial sale and confirmation] been destroyed by fire, the court might take that into consideration and might, if equitable so to do, decline for that reason to confirm a sale where the purchaser would not receive the property in the same condition as it was when the referee sold.”
17. McLaren v. Hartford Fire Ins. Co., 5 N. Y. 151. Action on a fire policy, brought by a mortgagor after the property had been sold at a foreclosure sale on September 6, 1848, for a fixed price, to a third person, who had paid a deposit, and balance was to be paid on October 1, following, or as soon as the decree of sale should be enrolled, “ when the master’s deed would be ready for delivery.” The building was-destroyed by fire on October 11, and the “ decree was enrolled and the deed delivered ” on November 6. This action was commenced in May, 1844, by the mortgagor who originally got the property insured and held policy. The policy contained the usual conditional clause that the policy should be void in case of any transfer of interest in property without consent. Held, that (contrary to the English rule that a sale is binding only from time of confirmation) “ with us the sale is strictly judicial, binding all parties from the time when the property is struck off ” at auction sale, and it vested “ according to the practice of the court of chancery in this State, a complete equitable title in the vendee to the mortgaged premises ” from that time, even though no deed was then delivered; and that the mortgagor (plaintiff) was, by the sale, divested of every interest except a bare, formal legal title, and hence the ^ condition in the policy had been violated, which would preclude a ' recovery. “But whether this be so or not ” plaintiff could not recover because he had no valuable interest in the subject insured. [See Mut. *366 Life Ins. Co. v. Balch, 4 Abb. N. C. 200, (below stated) which holds ■that the above case is practically overruled by subsequent cases.
— after confirmation and before deed.] Gates r. Smith, 4 Edw. Oh. 702, was a suit for partition of certain real estate, but the questions •decided arose upon a petition (or motion) presented during the penden•cy of the suit by one of the defendants praying that certain co-defendants might be compelled to join said defendant in the execution of the necessary papers, to obtain from an insurance company the amount of loss (occasioned by fire upon the premises), under an insurance policy originally in favor of both plaintiffs and defendants. There was, also, a cross-motion that the said defendant be compelled to complete the pur-chase of the said premises, irrespective of the insurance money, i. «., There had been a deeree for a sale of the premises and they had been sold by a master in chancery to the said defendant, and the master had made his report of sale and said report of sale had been confirmed July 10, 1845. But before any deed had been prepared or executed and on the 19th of same July {after confirmation of sale) a two-story brick front house, etc., standing at time of sale, was destroyed by fire, but had been (as aforesaid) insured in said company before the sale in favor of all parties to this suit. Held (Per Chancellor War. T. McCounciting Paine v. Meller, 6 Ves. Jr. 349, and ex parte Minor, 11 Ves. Jr. 559) that from the time when the report of sale was confirmed the purchaser became the owner of “ the house and lot, although "no deed was executed conveying the property,” i. e., owner in equity from confirmation of sale and risk and loss falls upon purchaser if premises burnt down after confirmation, even though no deed executed. “ But, if destroyed -after the contract of sale, and before its confirmation by the court, the vendor, or he in whose behalf the property is sold, bears the loss.” “ This is the rule in the English chancery with respect to judicial sales. . . . . I see no reason why it should not be the rule here in sales under decrees which require confirmation before deed can be given.” The court in a dictum said that in case of a private sale, it “is the true ■and correct doctrine of a court of equity, ” as uheld in Englandf that “if the purchaser agrees to accept the title after the abstract has been furnished, he from that moment becomes the owner.” Hence, applying these "doctrines, the court held that the purchaser in this case must be regarded as the owner in equity and entitled to full benefit ■of the said insurance money, and that the co-defendants must be decreed to unite with the purchaser to secure the insurance moneys from the insurance company, and in case of failure to recover such moneys, the purchaser must be held to bear the entire loss, and the court decreed that upon collection of said insurance, the master *367 •should so report to the court, in order that it might dispose thereof in accordance with the rights of the parties in this partition suit.
18. Slight injury only ground for compensation]. Aspinwall v. Balch, 4 Abb. N. C. 193. Purchaser sued to be relieved from his purchase at a foreclosure sale, and for a return of money deposited at the time of sale.
Sale made by referee on usual printed terms. So much was paid down and balance to be paid to referee on a given date, when deed was to be delivered to purchaser. Property consisted of store and dwelling-house, of which the land was the most valuable portion. A few days after sale, and before time to deliver the deed, the property was slightly damaged by fire. Purchaser (or his assignee) then gave notice that he would not accept deed on the said future date, and desired return of deposit. Referee then went on to re-advertise the property for sale, and gave notice to purchaser that he would be held for any loss, etc., on a resale under the said printed terms of sale.
Held (Daly, Ch. J.), that as the damage was slight and purchaser could be indemnified against the slight loss at time of tender of deed, the motion to be relieved from his purchase should be denied; but that as matter of law in this State, where a fire occurred between date of contract of sale and the time for performance by delivery of deed, which fire caused a substantial destruction of the property contracted for, then the purchaser was not bound to complete his contract, because he was not the equitable owner of such property and was not entitled to the benefits or profits thereof nor subject to any losses or burdens thereon until the time fixed for delivery of deed, when by payment or tender of the purchase money he acquires the right to the immediate possession. But where (as here) the injury to the property is comparatively slight, and full and adequate compensation for it is offered to the purchaser, there is no reason why he should be relieved from his contract.
19. Substantial injury, releases]. Mutual Life Ins. Co. v. Balch, 4 Abb. N. C. 200 (Supreme Ct., Sp. T., 1st Dept., Barrett, J.), was a motion by plaintiff to compel purchaser at a foreclosure sale to complete his purchase, or in default that the referee might resell at loss and expense of purchaser, etc. The judicial sale had been made by the referee on the usual printed “ terms of sale,” on March 7, ’77, for so much, and the purchaser made a deposit thereon and the remainder “ was to be paid to the referee on April 7, ’77, when his deed was to he delivered to the purchaser.” Premises consisted of land on which was a valuable brick store and dwelling, fit for immediate use. A few -days after the sale (and before time to deliver deed) a fire damaged the building to the extent of §2,000. If property had not been injured *368 by fire, contract would have been completed, and premises might have-been leased by the purchaser on 1st May following.
Purchaser notified plaintiff and referee of his refusal to take premises because of fire. The premises were injured “to a large amount,” were rendered untenantable and unfit for occupancy—former tenants-vacated because of fire, etc. Plaintiffs did not offer to compensate-purchaser for loss by fire, nor for loss of prospective rent, etc. Hence this motion to compel purchaser to complete purchase.
Held (disapproving McLaren v. Hartford Fire Ins. Co., 5 N. Y. 151, as having been practically overruled) that “ the just rule upon judicial sales, is that which places the property at the risk of the purchaser-only when the deed has been or should, and but for his failure, would have been delivered; in other words, when by the terms of sale he-becomes entitled to possession, with the corresponding right to rents and profits..... The rule is that where the property is so materially injured as to be greatly diminished in value the purchaser is not obliged to accept it,” citing and following Aspinwall v. Balch, 4 Abb. N. C. 193, as being good law.
Hence, applying rule, the court denied the motion, with costs, and granting prayer of opposing affidavit of purchaser that he be repaid his purchase money. [The court intimated in a dictum that i£ an offer-to restore premises, with reasonable compensation for loss of rental and the delay had been made, “it would have been considered and weighed.”]
The court also said: “ The rule that the premises are at the risk of the purchaser undoubtedly applies when, as in McKechnie v. Sterling; (48 Barb. 330), the contract is absolute, and the vendee is authorized to take immediate possession of the land. There, from the date of the-contract, he is entitled to the rents and profits, and is bound to pay interest on the purchase price.”
20. Analogy of claim to rents.] Mitchell v. Bartlett, 51 N. Y. 447. A purchaser (at a foreclosure sale) sued for the rents accruing between the date when the deed was to have been delivered to him, and.the date when it was actually delivered to him a few months later. The purchaser had bid off the property and paid part down and signed, an agreement to pay balance and take the deed at referee’s office on a given date about a month later. At the given date the purchaser■ (plaintiff) was not ready to take the deed, and the referee did not consent to extend his time, but several months later the purchaser did-finally get ready and took the deed, and then claimed the rents as aforesaid and brought this suit against owner of the equity of redemption,, who had collected said rents. Held, that even if it be conceded that a doctrine giving a deed such retrospective effect (i. e., by relation *369 back from time of actual delivery to time when it was to have-been delivered (as here contended), “ could properly be invoked in any case, it could only be when the purchaser was entitled thereto at an. earlier date, and it had been unjustly and improperly withheld, without any fault or neglect on his part,” but “ the facts in this case show that the plaintiff himself was in fault. The whole time which elapsed, between the day fixed for the delivery of the deed and the time it was delivered, resulted from his failure to pay the purchase money, and consequently he had no right thereto previous to such payment. Under such circumstances the rule cannot apply.” Also laid down by the court that the relation between the purchaser (plaintiff) and defendant (owner of equity of redemption) was not like that of vendor and vendee, and defendant could not have enforced specific performance, and hence could not have invoked the equitable rule that by a contract of sale the vendee becomes the owner in equity, even “assuming the general rule in equity to be as claimed, ” i. <?., foreclosure was hostile to defendant, who had no power or authority to deal with the purchaser.
21. Cheney v. Woodruff, 45 N. Y. 98. Purchaser’s action for use and occupation of premises between the date of his purchase at foreclosure sale and the date of the delivery of the deed to him. Held, that the purchaser at a mortgage foreclosure sale was not (as contended) the equitable owner from the time of the auction, and that his title did not (as contended) relate back from date of delivery of deed to time of bidding at auction (citing Paine v. Meller, 6 Ves. Jr. 349). That “this doctrine of relation in this State, has generally been limited in other cases, to the time when the deed should have been delivered ; when it was due by the contract ; and its non-delivery was not caused by any failure of the party seeking the relief.” Hence judgment for plaintiff in court below was reversed and new trial ordered.
22. Analogy from contract providing for foreclosure.] Bostwick v. Frankfield, 74 N. Y. 207. Action to “ enforce an alleged equitable lien ” on defendant’s premises. He had leased them (three lots of" land) to T. for three years. During the term defendant made a written contract with said T. to sell the property to T. for a stated price, so . much to be paid down when deed should be given, and the rest to ■ remain on bond and mortgage ; and it was “ further understood and . agreed that unless this contract shall be carried out by the party of ' the second part (T.) by June 1, 1871, the same and everything herein; shall henceforth be null and void, and of no further effect.” T. did. not complete the purchase and take the deed. But T. had built a, church upon the land (with defendant’s consent), and had run in debt. to the plaintiff for loans to build the church and had given his bondj *370 (secured by mortgage on the church and lots and lease) to the plaintiff for the amount of said debt; and T. not having paid his rent the defendant had dispossessed T. from the premises after the time fixed for the proposed sale of the premises.
Held, that as T. had not performed the contract for purchase, the contract was null and void, and therefore the lease was not merged in the contract of sale, but was left in full force, and as T. had been properly dispossessed for non-payment of rent he had no interest in the premises, and therefore the plaintiff could not enforce the alleged equitable lien, and therefore the order of General Term (reversing judgment in favor of plaintiff) should be affirmed. In the course of ¡the opinion, the court said (evidently to meet the contention that the contract of sale made T. the owner in equity) : “The equitable -doctrine which protects an individual who has contracted for the •purchase of land, and treats him as the owner, and the vendor as the ■owner of the purchase money, is not an invariable rule, and is subject do some exceptions. It cannot be applied when the intention of th'e ■parties is clearly adverse to any such presumption. Such intention is ■apparent here not only from the provision in the contract that unless -carried out at the time named it should become void, but from the . absolute refusal of the party to perform, as well as from the apparent •■intention, by a failure, to provide for taking possession, that the lease ■should continue in force.”
23. Analogy from right to sue for trespass.] Smith o. Price, 42 III. :399, was an action at law in trespass for injury to realty in a case ■where defendant had entered and cut trees. (Per Curiam). “The ¡plaintiff had bought the land from defendant, and had been let into ■possession under his purchase and contract, but he had not obtained "his deed. . . . The first payment had been made and the second was not due when the trespasses were committed.” . . . The premises “were, in fact, the property of the plaintiff, subject to the lien of the defendant for the unpaid balance of the purchase money.”
II. English Gases.
24. General rule.] In deciding Poole v. Adams, 12 Weekly B. 683 (above cited), Kindersley, V". C., said that . . . “it seemed to be well settled that after a binding contract for sale, the property was at the sole risk of the purchaser, who must bear all losses by fire or other accident.” Hence where there was no provision in the contract that the purchaser should have the benefit of insurance, a trustee selling had no right, as against his cestui que trust, to allow the purchaser the money ; and equity would compel the purchaser to respond by decreeing “a lien for [the money] and interest at £5 per cent, under the contract as being unpaid purchase money.”
*371 [See later cases on p. 361, et seq. above.]
25. Writing out contract—at purchaser's option.] In Edwards v. West, L. R. 7 Ch. Div. 858 (in 1878), a lease (of a mill and houses and gardens) was made for a definite number of years with privilege (or option) to lessee to purchase at a fixed sum by a certain date. The lessor was to insure for £14,000 ; in case of fire doing damage to an amount less than £4,000 the term was to continue and the lessor was to expend insurance money in restitution of premises. If the loss exceeded £4,000 then term was to cease and nothing was said as to insurance moneys. By subsequent agreement the time to purchase was extended to a later date than that mentioned in lease.- Prior to said date a fire ■caused greater damage than £4,000, and £14,000 insurance money was ■collected by lessor. Afterwards, and on the day before the time to exercise the option, the lessees notified lessor that they would purchase at the price fixed and should claim the insurance moneys. Held, the lessee’s bill claiming right to purchase and that lessor should be declared trustee for them of the insurance moneys, must be dismissed. For although it was a rule in equity that where a contract could be “ specifically enforced as of the date of that contract, and neither earlier nor later, the property comprised in that contract is ■deemed to belong to the purchaser, and the money to be. paid is deemed to belong to the vendor, because those two things ought to be done,” yet in this case there was no obligation to do either of those things at any earlier date than that of the contract constituted by the exercise of the option, and hence the lessees could not have any right to the insurance moneys by any doctrine of relative force to the date of the lease when the option was given.
26. No time fixed, and delays in conveying.] Harford v. Furrier, 1 Had. 532.-'• Specific performance of a contract for sale of farm-lands, on payment of part down and the rest in installments. Abstract to be delivered in six months, but no date mentioned for passing deeds. Pending negotiations for good title, the tenant (a third person), erroneously left the premises, and because of being untenanted, the buildings, lands, fences, etc., deteriorated in value. Held, that “It is the established doctrine of equity, that if a contract to purchase is to be completed at a given period and the title is finally made out, .the parties continuing in treaty, and the purchaser not by any acts released from his bargain, the estate is considered as belonging to the purchaser from the date of the contract, and the money from that time as belonging to the vendor.” Hence, held, that as a good title had finally been made •out here, the purchaser must bear the loss of deterioration, and that here there was no such delay on part of vendor in making out his title as could excuse the vendee from his contract.
*372 27. Contract to construct or complete building.] In Counter v. Macpherson, 5 Moore Priv. C. 83, a bill was filed by a lessor for the specific performance of a contract (made by correspondence) “ for a lease to be granted ” to defendants for five years from 1st April, 1840, of a wharf and warehouses after the lessor should first (before said date) put some of the buildings in repair and build a new one ; the rent to be governed somewhat by what was expended for the new buildings. The repairs were not completed and the new building was not completed on said date, but the intended lessees waived the-question of time ; and after that date the buildings were substantially destroyed by fire before they were completed. Held, that as the lessor-had not performed on his part by putting the buildings into condition before the lease was to be made, he could not enforce specific performance. The court said there was-no doubt of the general doctrine that “in ordinary cases of absolute and unconditional contracts, the risk is-the risk of the purchaser, because that which is the subject of the risk is in equity considered to be the property of the purchaser. But treating the contract to take a lease as a contract to purchase, the warehouse was never to be in that sense purchased by the lessees until it was completed by the lessor; and, until that had been done, therefore-it was not the property of the lessees, They had never contracted to take an unfinished warehouse . . and although after the 1st April, 1840, the contract was still binding in equity, provided the appellant [lessor] performed it on his part, yet until he had so performed it no. obligation attached to the lessees. They could not object that the lessor-had not performed his engagement within the time limited, but they had aright to require that he should perform it before they were called upon-to accept a lease.”
III. Eights as to Insurance.
28. Eight to insurance moneys.] In Reed v. Lukens, 44 Pa. St, (8 Wright) 200, agreed facts as to whether plaintiff (vendee) or defendant (vendor) was entitled to insurance moneys in hands of the insurers, for loss by fire of a barn, part of property contracted to be sold to defendant. Contract was written for sale of a farm with buildings thereon, “ whereby he sold the property ” to defendant fpr so much, “ and undertook to make and deliver to him a deed for it on. 2nd day of April following.” “ After the execution of the contract of' sale, and before the time for delivering the deed, the barn was-destroyed by fire,” on which was the policy of insurance in question.
Held. Per Curiam (below), “ On the execution of the contract of sale, the plaintiff became in .equity the owner of the property the defendant holding it thereafter as his trustee, with a right to retain it until the purchase money should be paid. Whatever advantage might *373 thereafter arise to it would be the plaintiff’s, and whatever loss . might befall it he must sustain,” etc. But, as between the insurers and the vendor, the money must be paid by the insurers to the vendor and be held in trust for the vendee. Affirmed on opinion below.
29. Ins. Co. 11. Updegraff, 21 Pa. St. (9 Harris) 513. Vendor’s action on a fire policy on a building totally destroyed by fire, after a contract for sale made, but before time for conveyance. The contract was to convey when all the purchase money had been paid, part down •and the rest in annual installments.
Held., that the (vendor) was entitled to recover as against the insurance company, which could not take advantage of the doctrine that the vendee was owner in equity after the contract of sale. The vendor was trustee for the vendee.
30. OonPract to assign insurance.] The vendor’s stipulation to assign to the purchaser his policy of insurance, is not a sufficient projection after the property has come to be at the risk of the purchaser; for the measure of damages on the breach of such astipulation, followed by the destruction of the premises by fire, is nob the amount of insurance or value of the property burned, but- only the sum that it would have cost the purchaser to insure for himself. At least this was held by no less authority than- the supreme court of Massachusetts, in Dodd v. Jones, 137 Mass. 322 ; s. c., 24 Am. L. Reg. N. S. 34, where It appeared that the vendor did not perform his stipulation to assign the policy, but put off the purchaser with various excuses, and the pur•chaser relied on these promises instead of insuring for himself.
31. Insurance moneys.] For other important cases on the right to the benefit of outstanding insurance, or to have insurance moneys collected by the other party to the contract applied thereon, see Poole v. Adams, 12 Weekly Bep. 683; Rayner n. Preston, I. B. 14 Oh. Pin. 297; affi’d ■on appeal in 18 Oh. Pin. 1; fully stated above on page 351.
32. Insurable interest of purchaser.] A purchaser, in possession under -a valid contract, has an insurable interest. Ætna Fire Ins. Co. v. Tyler, 16 Wend. (N. Y. ) 385; s. c., 30 Am. Dec. 90 ; Franklin Fire Ins. Co. v. Martin, 11 Vroom (N. Y.) 568; s. c., 29 Am. R. 271; Pelton v. Westchester Fire Ins. Co., 77 N. Y. 605 ; affi’g 13 Hun, 23.
33. So of one who has conveyed by a deed absolute in form but in •fact a mere security. Barry n. Hamburg, 110 H. 7. 1 (holding that •execution and delivery of such a deed was at law, as well as in equity, a mere security, and did not effect a “ change in title”). So also a grantor conveying but remaining in possession under the grantee’s -oral promise, yet unfulfilled, to convey back to him a life estate has an ’insurable interest. Redfield v. Holland Purchase Ins. Co., 56 N. Y. 364; s. c., 15 Am. R. 424.
*374 Si. As to insurable interest under the continuing existence of a contract of sale, see Davidson v. Hawkeye Ins. Co., 71 Iowa, 532; s. c., 32 Northw. Rep. 515, and cases cited.